E. C. Kane, Appellant, v. Henry J. Wehner et al., Appellees.

Gen. No. 9,265.

Heard in this court at the January term, 1941. Opinion filed November 3, 1941. Rehearing denied February 3, 1942.

JACOBY & PATTON, EPLER C. MILLS, F. L. MANNS and EMERSON BAETZ, all of Alton, for appellant.

CLARENCE W. HEYL, of Peoria, for appellees.

MR. JUSTICE RIESS delivered the opinion of the court. Plaintiff appellant, E. C. Kane, of Alton, Illinois, filed suit in the circuit court of Mason county, wherein he sought recovery of damages alleged to have been

sustained by him while duck hunting in a boat on November 7, 1937, through the alleged negligence of one Vernie Fritz, resulting in the loss of plaintiff's right foot, and by subsequent operations, portions of his lower right leg. The complaint further charged that at the time of the alleged negligent shooting and injury of the plaintiff, Fritz was employed and acting as a servant or agent of defendants Henry J. Wehner, John Wehner and W. T. Boyd, in the conduct, as copartners, of duck shooting grounds located adjacent to the Illinois River in Stewart River, Mason county, Illinois.

At the close of plaintiff's evidence, motions for a directed verdict in favor of each and all of the defendants on the ground that no prima facie cause of action had been established by the plaintiff were interposed and allowed as to all of the defendants except Vernie Fritz, after which plaintiff dismissed the suit as to said defendant, and judgment was entered upon the directed verdicts against the plaintiff appellant in bar of suit and for costs as to the remaining defendants. Motion to set aside the directed verdicts and judgment and grant plaintiff a new trial was denied and this appeal then followed.

In order to establish a prima facie cause of action, it is the law and is in effect conceded by respective counsel that it was necessary for plaintiff to show by competent legal evidence and reasonable inferences therefrom (a) the negligent shooting and injury of the plaintiff by the defendant Vernie Fritz while the plaintiff was in the exercise of due care for his own safety, which proximately caused damages to the plaintiff as charged. Upon the denial of the motion for a directed verdict as to said defendant, the lower court so found and we are in accord with its findings upon the facts and circumstances in evidence.

(b) That in order to establish a prima facie cause of action against the remaining defendants or any of them, it was necessary to also prove that the relation-

ship of master and servant or agent existed between defendant Fritz and one or more of the remaining defendants and that at the time of so causing the alleged tortious injury, the servant was engaged in his master's business and acting within the scope of his authority. In appellant's brief, it is concisely stated that ''Success of this appeal must depend on the application of the rule governing a master's liability for his servant's torts. There is no contention that the named appellees are responsible to the appellant for any wrong other than the negligent handling of a firearm by their alleged servant, Vernie Fritz; therefore, unless the evidence admitted, or offered and improperly excluded, suffices to show prima facie that some or all of the appellees were Fritz's employers, the appeal must fail.''

(c) It was the further contention of the plaintiff that all of the defendants were engaged in the conduct of a shooting grounds for profit and that a copartnership relation existed between them in the pursuit of said venture as shown by the evidence admitted or offered and erroneously excluded by the court. If the plaintiff's second contention, namely, that the master and servant relation was not shown to exist, is sustained, it becomes unnecessary for us to pass upon the third contention that a copartnership relation existed between the remaining defendants. If, however, the relationship of master and servant appears from the evidence or reasonable inferences therefrom under the motion for directed verdicts at the close of plaintiff's evidence, it becomes necessary to pass upon the contention of prima facie proof of a copartnership relation between the remaining defendants.

The defendants denied the material allegations of the complaint and especially denied any negligence on the part of defendants or any of them; the existence of such relationship of master and servant or principal

and agent and the alleged copartnership relation between any of the defendants.

Plaintiff introduced in evidence a letter, exhibit "D," dated September 28, 1937, from defendant Henry J. Wehner, wherein it was stated that "I have a very good shooting place near Browning this year, there are a good many ducks here now. The price is $7.50 (3.00) and $10.00 (5.00) per shoot. You may also hunt at Frederick if you like. If you should like a shoot let me know as soon as possible, as the blinds are very much in demand." Plaintiff appellant answered the letter and requested that a blind be reserved for him and one Clyde Bassett for November 1st, further stating that they would "undoubtedly come up to Beardstown Sunday afternoon October 30. In case we do we will drive over to your farm at Frederick and see you for a few minutes."

On October 30, plaintiff Kane telegraphed defendant Henry J. Wehner at Havana, Illinois, that "due to unforeseen difficulties cancel three reservations for Monday will want them November seventh." On November 2nd, defendant W. T. Boyd wrote to plaintiff Kane, stating "Your telegram to Mr. Henry Wehner Havana was given to me to answer. As I am managing the duck grounds here at Stewart Lake, we can take your party for next Sunday Nov. 7th, as there is no water nor ducks at the other place at Frederick. You can come up to my place for the night, and meals and be ready to. out early Sunday Morn. There is a gravel road to our place from #100 at 1 mile east of Sheldons Grove."

On November 3rd, plaintiff telegraphed to Henry J. Wehner at Havana, Illinois, as follows: "Reserve blinds for two men for saturday and sunday of this week." To this telegram, defendant W. T. Boyd replied as follows: "Mr. Wehner gave me your telegram of 1st, to answer. Will hold blind for you & friend Nov. 6th and 7th and hope that you will have a good

shoot while here. Go past Sheldons Grove & turn to right, on a graveled road.''

Wehner's letterheads contained only his name and address. At the top of both of Boyd's letterheads appeared the following: "W. T. BOYD, Duck and Goose Shooting, Black Bass Fishing, Telephone and Telegraph via Astoria, R. R. Stations Browning and Bath, Located on the Illinois River, six miles east of Browning and ten miles west of Bath; ten miles off the hard road at Frederick, route No. 3. Our motorboats and taxi will meet any train, any time, anywhere, upon notice. Heated blinds for cold weather. From Chicago take state hard road route No. 4 to Chenoa, No. 8 to East Peoria, No. 24 to Pekin, No. 9 to Canton, No. 31 to Astoria; from there eight miles of improved dirt road will lead you to our place, a total of six or eight hours driving. From St. Louis take state hard road route No. 3 to Jacksonville, No. 10 to Alexander, No. 3 to Frederick, from there ten miles of improved dirt road to our place, a total of five hours driving.''

Appellant testified that on November 7, 1937, he, accompanied by Clyde Bassett and Charles Wilkins, went to the place indicated in Boyd's letter. At the Illinois River shore they were taken by Boyd in a boat to an island, where they were met by Henry Wehner and defendants Wehner and Boyd then took them across the island, Wehner and Boyd each carrying a sack of decoys. They had then arrived at Stewart's Lake, where Bassett and Wehner engaged in a discussion as to how to allot the parties to the blinds.

According to appellant, Wehner told them that there were blinds together out on the lake, but "some parties have a reservation on one particular blind.'' He then told Kane's party to wait; that he would "go out there and determine" if certain parties apparently in the blind "are the parties that belong in there.'' Wehner then went out and returned, saying that the right persons were in the blind. Wehner then told a man

present to get some reeds and fix a blind. The man did so, and Bassett and Wilkins went out to it. They remained in it thirty or forty minutes and returned, saying the shooting was "no good" and they wanted to return to Beardstown. Plaintiff Kane, however, insisted on shooting, so the others agreed to wait on the bank for him. Kane turned to Henry Wehner and said, "Henry, what boat can I take?" Wehner replied, "That one there," indicating a boat. Vernie Fritz was also present at this time. Kane testified that he spoke up and said the wind was coming up and that Kane would have a good shoot if he went out. Kane then again asked Wehner about a boat, but this time Wehner answered, "Ed (Kane), I will have to send a pusher out with you." A pusher is a guide. "I don't need a pusher," Kane replied, "I was raised on the Mississippi River and can row a boat as good as any pusher." "It is necessary to send a pusher with you," Wehner responded, "There is fifteen feet of water out there and I have got to send a pusher with you for safety first's sake." "I have a pusher and guide here," he continued, and then turned to Fritz and said, "Take Mr. Kane out there; give him the breaks on the shots and he will get them if you give him the breaks."

Kane and Fritz then got in the boat and went to the blind. Both were armed with shotguns, and both shot at a duck which flew over. Kane shot once; then Fritz shot; then Kane shot again. Kane testified that he reached back in his coat for more shells; that while he did so, Fritz's gun was discharged and the shot penetrated Kane's foot and leg and that Fritz was holding the pistol grip of his gun at the time; that Fritz exclaimed, "Christ Almighty, I have shot you."

Appellant's foot and leg thereupon began to bleed profusely, and there was a rush to get him to shore. Fritz called for help and rowed as fast as he could; those on shore waded out and helped them in. Kane's

injuries subsequently resulted in the amputation of his leg and repeated operations on the stump to halt the progress of a resultant osteomyelitis.

On cross-examination Kane said he had nothing to drink during the morning; that Wehner had told him he had to take a pusher with him; that Fritz had "hold" of the pistol grip of his gun when it was fired, and that the barrel of it was pointed toward him when he was shot.

Bassett and Wilkins corroborated the substance of Kane's testimony as to what occurred while they were present, and the trial court properly held that plaintiff had made prima facie proof of his alleged cause of action against Fritz.

Upon a motion of the defendant for a directed verdict, the court can only determine whether or not there was any evidence, which, with all reasonable inferences therefrom, viewed in the light most favorable to the plaintiff, tended to prove the material allegations of the complaint or some count thereof. If there was such evidence, it became the duty of the trial court to deny the defendant's motion for a directed verdict and to submit controverted issues of fact to the jury, subject only to the giving of proper written instructions by the court as to the law applicable thereto. A motion to direct a verdict should be allowed if, when all the evidence is considered, with all reasonable inferences to be drawn therefrom in its aspect most favorable to the party against whom the motion is directed, there is a total failure to prove one or more necessary elements of the case.

From a consideration of the foregoing correspondence and telegrams in evidence which passed between the plaintiff and the defendants Henry J. Wehner and Boyd, it appears that the first letter from Wehner was one soliciting the patronage of the plaintiff at shooting grounds for a valuable consideration and for profit; the answers of Boyd to plaintiff's telegrams; the spe-

cific communications and subsequent arrangements made by said defendants Wehner and Boyd with the plaintiff and his companions for use of the hunting grounds upon the terms submitted; the admission that each of said defendants was to receive a division on a fifty per cent basis of the charges or receipts from the shooting grounds; the fact that they together met and received the patrons, furnished the boat, decoys and blinds without any explanation so far as the testimony of the plaintiff shows of their respective interests or relationship; the insistence of Wehner that a pusher or guide would be furnished by him; his designation of Fritz as such pusher without any explanation that he was a guest or other than a guide or pusher furnished by him; that they knew he carried with him the gun and ammunition and made the request that he give the plaintiff the breaks in shooting, were facts and circumstances in evidence from which it might reasonably be inferred that the relationship of master and servant existed between them and that the defendant Fritz, in carrying out the specific directions of the defendant Wehner, negligently injured the plaintiff, which evidence constituted in the opinion of this court such a prima facie showing of the relationship of master and servant upon the facts, circumstances and reasonable inferences therefrom, when viewed in the light most favorable to the plaintiff, as to require the defendants under the issues joined to offer proof as a matter of defense in support of their denial that such relationship did so exist.

The application of this rule has been well stated as follows: "In an action wherein defendant's liability depends upon proof of a master-servant relation, such relation is prima facie established by showing the alleged servant was performing services peculiar to the defendant's business or affairs on and about the latter's property, and acts done in the rendition of such services may be found to be within the scope of em-

ployment, thus calling upon the defendant for rebuttal if he desires to escape the possible consequences." *Hozian v. Crucible Steel Casting Co.,* 132 Ohio St. 453, 8 O. O. 375, 9 N. E. (2d) 143, 112 A. L. R. 333, 335. We are therefore of the opinion that the court, in allowing the motion at the close of plaintiff's evidence for a directed verdict of not guilty as to the defendant Henry J. Wehner was in error.

Defendants Henry J. Wehner and Boyd were called by plaintiff for cross-examination under section 60 of the Practice Act (sec. 184, ch. 110, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 104.060]). The testimony which plaintiff sought to thereby introduce related to certain alleged statements and admissions against interest of said parties concerning alleged partnership relations between them, made upon the occasion of taking their respective depositions under the statute for the purpose of discovery. During the course of this examination, it developed that they were operating the hunting grounds under a written agreement designated as a lease which had expired but was claimed by defendants to be orally continued and in effect and was identified but not offered in evidence. The court, upon objection of defendant's counsel and avowal of intended proof, excluded all alleged oral statements of defendants against interest concerning the alleged copartnership at variance therewith and held in substance that the written agreement was the best and only admissible proof or evidence of the relations so sustained by the parties thereunder. Plaintiff alleged that a copartnership relation existed, while it was the contention of the defendants that they operated under a lease whereby 50 per cent of the profits was to go as rent to Wehner, as lessor, from the business operated by Boyd, as lessee. While the excluded testimony bore upon the controverted issue of whether a copartnership or a tenancy relationship existed, the court was in error in excluding oral statements in the nature of ad-

missions against interest made by the defendants, since the alleged agreement or contract between them was not binding upon third parties who might show by facts, circumstances or statements of the parties what their actual business relations and conduct were, subject to being controverted, if so shown, by the defendants by any competent legal evidence.

It was early held in this State that "A stranger may prove a partnership by the acts and admissions of the partners, although written articles of partnership may exist between them." *Kaskaskia Bridge Co. v. Shannon*, 6 Ill. 15, 25. In actions between partners and third persons where it is sought to prove not the terms of the agreement but merely the existence of the partnership, the best evidence rule does not apply, and the existence of the partnership may be proved by parol evidence without the necessity of producing the written articles or explaining their absence. 22 C. J. 999 and citations; Jones on Evidence (4th ed.), sec. 203, page 392; *Farmers & Merchants Bank v. Narvid*, 259 Ill. App. 554, 557 and citations.

Defendant's counsel further contended that the cross-examination of defendants by plaintiff was for the purpose of impeachment. We cannot concur in this contention. Plaintiff may properly call any competent witness, or may call any defendant as an opposite party under section 60 of the Illinois Practice Act to show statements or admissions against interest, whether oral or written, as to material matters, when voluntarily made by the defendant at any specified time and place. While defendants were not called for the purpose of impeachment, it is unnecessary in any event to lay grounds for impeachment of statements made at another time or place as to material matters at variance with witness' statements on the witness stand, where such witness is a party to the suit. *Johnson v. Peterson*, 166 Ill. App. 404, 405; *VanMeter v. Gurney*, 240 Ill. App. 165, 188. That rule would only

apply when seeking to lay grounds for impeachment of other witnesses, not parties to the suit. It finds no application here, in any event, since the purpose of calling the witness, as stated by plaintiff's counsel, was to show statements and admissions against interest which were competent substantive evidence against the defendant.

Without reviewing the testimony concerning the defendant John Wehner, we find that there was no evidence, which, with all reasonable inferences therefrom, established prima facie proof of a copartnership relation between the said defendant and any of the codefendants; but on the contrary, clearly established a tenancy relationship between John and Henry J. Wehner, and that the court properly allowed the motion for a directed verdict as to defendant John Wehner.

We find and hold that the proof admitted in evidence and statements and admissions against interest erroneously excluded were sufficient to constitute prima facie showing of a copartnership relation between Henry J. Wehner and W. T. Boyd and a prima facie showing of master and servant relationship as between said named defendants and the former defendant Fritz.

We further find and hold from the record herein that the trial court did not err in directing a verdict and rendering judgment in favor of defendant John Wehner and overruling motion for new trial as to said defendant, but that the trial court erred in allowing the motion for a directed verdict of not guilty as to the defendants Henry J. Wehner and Boyd, in entering judgment thereon after the close of the plaintiff's evidence and in denying motion to set the same aside and grant plaintiff a new trial as to said named defendants and in excluding proof of alleged statements against interest of said defendants as hereinabove indicated.

404

The cause is reversed and remanded for retrial or further disposition thereof with directions to proceed in accordance with the holdings herein.

*Reversed and remanded with directions.*