**STATE of Iowa, Appellee,**

v.

**Raymond James HEPHNER, Appellant.**

No. 53115.

Supreme Court of Iowa.

Oct. 15, 1968.

Donald E. Poyner, Sigourney, for appellant.

Richard C. Turner, Atty. Gen., William A. Claerhout, Asst. Atty. Gen., and Albert F. Goeldner, County Atty., Sigourney, for appellee.

MASON, Justice.

Raymond James Hephner was convicted by a jury of assault with intent to commit murder contrary to section 690.6, Code, 1966, as charged by county attorney's information. After overruling defendant's motion for new trial the court sentenced defendant to the state penitentiary for a term not to exceed 30 years.

Defendant appeals from this final judgment, assigning as errors the overruling of defendant's (1) petition for change of venue, (2) objections to evidence offered by the State in rebuttal, (3) motion for mistrial and (4) motion for new trial.

I. Kenneth Hammes who lives with Elmer Conrad in a farmhouse about 8 miles southeast of Sigourney testified he was awakened about 9 p. m. November 8, 1967, by the south doorbell. He dressed, went to the east door and turned on a light. Defendant and another man identified in the record as "the kid" came around from

the south door, asked to get some gasoline. Hammes got his cap, jacket and key to the gas barrel, told Conrad two men wanted gas and he was going to get it for them.

As Hammes and the two men went to the gas barrel they asked who lived there, if they had awakened any children and how much farming he was doing. He told them Conrad was in the house. After Hammes filled the gas can they said they would need a funnel. The two men followed Hammes into the garage to get a funnel. Hammes testified that when he found the funnel he turned around to find defendant holding a gun in his face and was told, "Don't move, we've got a gun. * * * We're hot, so we have to have a place to stay. * * * We're going in the house." The kid said, "We've already killed a man."

As the three returned to the house Hammes was hit in the ribs with the gun, ordered to "open the door, we're going in" and to call Conrad into the kitchen. Hammes told Conrad to get his clothes on and come out. Conrad had seen defendant, his partner and Hammes return from the garage, said he wasn't getting up or coming out for anybody. Defendant again told Hammes to get Conrad out there. When Conrad refused to show himself the three proceeded down a hallway toward his bedroom. When one of the men said, "We've got a gun", Conrad replied, "That makes us even, so have I" and brought a previously obtained shotgun down into a lined position on defendant from the doorway. Hammes dropped to the floor, Conrad saw a pistol in defendant's hand, pulled the shotgun trigger but the gun contained no shell and defendant pulled it away. A scuffle between Conrad and defendant's partner followed with defendant hollering, "Pull that trigger, pull that trigger." The partner pulled the trigger, sending a bullet through the ceiling.

Mr. Hammes subdued defendant and the partner escaped. The deputy sheriff was called and the pistol turned over to him upon arrival. Defendant was taken into custody.

Trial commenced December 27 with Hammes, Conrad and Keith Bryant, Keokuk County deputy sheriff, testifying for the State. Defendant was the only defense witness.

II. December 14, eight days after the county attorney's information was filed, defendant filed a petition for change of venue setting forth the nature of the prosecution, the court where the action was pending and that he could not receive a fair and impartial trial owing to the excitement and prejudice against him in Keokuk County. The petition alleged belief of the grounds stated in general terms and was verified on information and belief by defendant. It was in substantial compliance with sections 778.2 and 778.6, Code, 1966. Although the petition is supported by identical affidavits of three Keokuk County residents, the affiants are not alleged to be disinterested persons as required by Code, section 778.3. No motion to strike the affidavits for this reason was filed.

The State filed no counter affidavits contradictory to the grounds stated for the change of venue.

Under his first assignment defendant asserts failure to grant the change of venue constituted a denial of due process.

■ Ordinarily a petition for change of venue in the form prescribed and in conformity to the statute, on its face proper and sufficient, makes a prima facie case, which if uncontroverted entitles the applicant to the change. See State ex rel. Fletcher v. District Court, 213 Iowa 822, 832, 238 N.W. 290, 295, 80 A.L.R. 339, and citations.

The day of the trial the following record was made:

"THE COURT: Let the record show the jury has been admonished and the Court is in recess and counsel for the defense and defendant, Mr. Hephner, are in chambers as well as Mr. Goeldner, County Attorney and Mr. Sloan, his assistant, it's

the Court's understanding the defense has motions they desire to present, is that correct, Mr. Gerard?

"MR. GERARD: That's correct, Your Honor.

"THE COURT: Proceed."

Both defendant's motions to quash the information and to suppress any evidence of material things taken from him as products of illegal search and seizure are set out in the record. They were both overruled. The State's opening statement appears next in the record.

Neither the record nor the trial transcript indicates defendant took any steps to have the court act on his petition for change of venue.

■ " * * * Statutory authorization of a change of venue is for the benefit of the party applying therefor, and he may abandon or withdraw the application at any time before the making of an order directing the change. An application for a change of venue not acted on must be presumed to have been abandoned." 22 C.J.S. Criminal Law § 204.

■ There being no ruling on defendant's application, it must be deemed he abandoned it. See Smith v. Commonwealth, 19 Ky.Law Rep. 1073, 42 S.W. 1138, 1139.

■ As tending to support our position see Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 721, 107 N.W.2d 85, 93–94, where in considering a somewhat similar contention as to the court's failure to rule upon objections to, or motions to strike, evidence or statements of counsel we said:

"[I]t was defendant's duty to request or demand such a ruling. No such request or demand was made and the objection or motion might be deemed waived. In re Estate of Coleman, 238 Iowa 768, 770, 28 N.W.2d 500, 502, and citations; Dougherty v. City of Sioux City, 246 Iowa 171, 195–196, 66 N.W.2d 275, 288, and citations; 4 C.J.S. Appeal and Error § 321c ('Generally, before the trial court can be put in error for the admission or rejection of testimony, it must be clearly shown that the attorney who considered himself aggrieved insisted on a ruling and that the court failed or refused to make one, or * * * made a ruling which was erroneous.'); Id., § 321f."

■ See also 4 C.J.S. Appeal & Error § 321e, page 1026:

"Although an appellate court will examine the contention presented by a motion pressed in the court below and considered by that court, a motion which, so far as appears from the record, was never decided or ruled on below presents no question for decision in the appellate court."

Defendant's meticulous attention during trial to preserving his record on other claimed errors is an indication he abandoned his petition for change of venue. The record presents no question for review under this assignment.

III. Defendant makes two contentions under his second assignment. Although he had objected to State's exhibit 4 as the product of an illegal search and seizure and improper rebuttal, only the rebuttal issue is raised on appeal.

Defendant testified on direct examination:

"Q. Now, you have stated that during the fight you saw a pistol. Do you know where that pistol came from? A. At that time I did not.

"Q. You don't know who had it or where it came from? A. The only time I saw the pistol during the fight, Elmer Conrad had it in his right hand, and this was when I saw the pistol, there was nobody's hand on the pistol but Elmer Conrad's."

Defendant had previously given his version of the incident by describing how he went to Hammes' house to purchase a couple gallons of gasoline when he thought

his car was running out of gas; after getting what he estimated were two gallons of gas he asked how much he owed, took a $10 bill from his billfold and said, "Here, it's worth a couple dollars." He asserts Hammes put the $10 in his pocket and said, "That's just right." Defendant maintains he insisted on some change and followed Hammes to the house to get it. In the house when he heard Conrad's voice, he walked down the hall toward Conrad's room where a gun barrel was shoved in his stomach. A fight over possession of the shotgun resulted.

After defendant rested, Bryant was called in rebuttal and testified regarding evidence found on defendant's person at the farmhouse at time of arrest. Included in the material was a pink paper which was a bill of sale from an Appelton, Wisconsin hardware store for a Ruger semi-automatic .22 pistol with the serial number 451429. It was marked as State's exhibit 4 and the witness testified the description and serial number on the exhibit matched State's exhibit 1, the pistol previously identified by Conrad as the one in defendant's possession November 8 which the deputy took from Conrad that night.

Defendant's objection to this testimony as improper rebuttal was overruled and the exhibit admitted in evidence. After the jury was excused defendant moved for mistrial, asserting the State had been improperly permitted to introduce this evidence in rebuttal. He renewed the objection in motion for new trial.

Defendant argues all testimony about the pistol in his direct examination referred to the time he saw it during the fight, not to a denial he had ever seen the pistol before; interpreting this testimony as saying defendant did not purchase the pistol or never had it in his possession before the fight would be stretching the context within which the testimony was given, for it referred to who had the pistol during the fight and not before as the State contended.

We think this contention is without merit.

 Although evidence which has no direct tendency to impeach, contradict, explain or otherwise rebut evidence is not admissible on rebuttal, "we recognize the general rule that the trial court has a good deal of discretion in determining what is proper rebuttal testimony. See 23 C.J.S. Criminal Law § 1050b, pp. 1217–1219 (1961); 53 Am.Jur., Trial, section 120, p. 106.

" * * *

"It is also thoroughly settled that the fact testimony used in rebuttal might have been used as part of the state's main case does not render it inadmissible in rebuttal if it rebuts some of the matters testified to by defendant's witnesses. * * *

" * * * we have also held several times the trial court has discretion to admit in rebuttal evidence which should have been offered in chief that is not strictly rebuttal. State v. Merrill, 242 Iowa 1156, 1160–1161, 49 N.W.2d 547, 550, and citations. * * *

" * * *

"Rebutting evidence is that which explains, repels, controverts, or disproves evidence produced by the other side. State v. Parish, 22 Iowa 284, 286. Many cases adopt substantially this definition. See 36 Words and Phrases, Perm. ed., pp. 678–679; 23 C.J.S. Criminal Law § 1050a, p. 1208 et seq." State v. Nelson, Iowa, 153 N.W.2d 711, 714–715. See also State v. Anderson, Iowa, 159 N.W.2d 809, 816, where we quoted with approval from Nelson, and citations in these cases.

 The admissibility of Bryant's testimony on rebuttal was within the trial court's discretion. Defendant's testimony as to the manner in which the fight developed and that set out supra, regarding where the pistol, State's exhibit 1, came from would permit the jury to find he was claiming "he had never seen this revolver before". State's exhibit 4, the bill of sale

from the Appleton hardware store found in defendant's possession at time of arrest, would tend to disprove defendant's assertion that at the time of the fight he did not know where the pistol came from. Under these circumstances the trial court did not abuse his discretion.

Defendant asserts in his second contention under this assignment no proper foundation was laid by the State for admission of evidence to impeach him. He maintains that before evidence to impeach him could be introduced proper foundation should first be laid in order to give him a right to make any admission, denial or explanation of the impeaching evidence. He contends he was not asked on cross-examination if he purchased the .22 pistol referred to in State's exhibit 4 nor if he ever had this weapon in his possession before the fight; there was no reference to the time, place and circumstances before the declaration of the person who wrote out the sales slip was admitted into evidence; and the State's tactic was an unfair surprise to defendant resulting in a denial of due process and a fair trial.

As stated, defendant made these two contentions as to State's exhibit 4 known to the trial court by timely objection to the offer and by urging its admission as error in motions for a mistrial and for new trial.

When defendant's possession of the sales invoice describing the pistol by caliber and serial number is placed side by side with his testimony that at the time of the fight he did not know where the pistol came from there is a self-contradiction. Both cannot be correct.

"To constitute a self-contradiction 'it is not a mere difference of statement that suffices; nor yet is an absolute oppositeness essential; it is an inconsistency that is required. * * * As a general principle, it is to be understood that this inconsistency is to be determined, not by individual words or phrases alone, but by the whole impression or effect of what has been said or done. * * *' 3 Wigmore, Evidence

725, § 1040." Travelers Insurance Company v. Miller, 104 Ga.App. 554, 122 S.E. 2d 268, 276–277.

"The inconsistency may be found expressed, not in words, but in conduct indicating a different belief." 3 Wigmore on Evidence, Third Ed., section 1040.

■ Any witness may be impeached or discredited by showing prior conduct inconsistent with his testimony. 98 C.J.S. Witnesses § 464; 58 Am.Jur., Witnesses, section 724; State ex rel. State Highway Commission of Mo. v. Fenix, Mo.App., 311 S.W.2d 61, 64.

It is not necessary, in order to make the invoice competent, that there should be a contradiction in plain terms. It is enough if the invoice, taken as a whole, either by what it says or what it omits to say, affords some presumption that the fact was different from defendant's testimony. See 3 Wigmore on Evidence, supra, where the author quotes from Foster v. Worthing, 146 Mass. 607, 16 N.E. 572.

The rule for which defendant contends provides a witness cannot be impeached by proof of contradictory statements or conduct unless a foundation has been laid by asking him whether he made such statements or carried out such conduct, giving particulars of the time, place and circumstances, thus warning him it will be offered against him by testimony later produced; and he may thus either prepare to deny it, if he claims not to have made it, or explain it, if he admits having made it. See Law v. Hemmingsen, 249 Iowa 820, 834–835, 89 N.W.2d 386, 396, and citations.

However in Mead v. Scott, 256 Iowa 1285, 1294–1295, 130 N.W.2d 641, 646, we expressed doubt as to whether this rule applied to a witness-party, saying, "Our attention is not called to any Iowa decision which clearly and squarely decides the question."

Wigmore maintains the rule applies only to the discrediting of a witness, and not to

the use of a party's admissions, whether or not he is also a witness. 3 Wigmore on Evidence, Third Ed., section 1039 and volume 4 of the same treatise, section 1051, where the author states the rule to be:

"The rule requiring that the witness must have been *warned when on the stand,* and asked whether he had made the statement about to be offered as a self-contradiction (ante, §§ 1025 ff.), has always been understood not to be applicable to the use of a party's admissions, i. e. they may be offered *without a prior warning to the party.*"

See also 4 Jones on Evidence, Fifth Ed., sections 933, 934.

 Defendant's plea of not guilty put in issue every material allegation contained in the information. Assault with a deadly weapon implies malice, an essential element of assault with intent to commit murder. State v. McNamara, 252 Iowa 19, 25, 104 N.W.2d 568, 572; State v. Jiles, 258 Iowa 1324, 1333, 142 N.W.2d 451, 456–457; and State v. McCollom, 260 Iowa 977, 151 N.W.2d 519, 525, and citations in these opinions. Deputy sheriff Bryant's testimony in rebuttal relating to defendant's possession of the sales invoice for the pistol involved in the incident is material and relevant on the issue of malice. Adverse to defendant as inconsistent with his plea and contradictory to the contention asserted in his testimony, this evidence constitutes an admission and may be introduced without the preliminary foundation required for that of a witness. It is admissible both for impeachment purposes and as substantive evidence of the fact to which it relates. Lovel v. Squirt Bottling Co. of Waconia, 234 Minn. 333, 48 N.W.2d 525, 530–531, and citations.

As previously noted, we are not aware of any Iowa decisions which clearly and squarely decide the question; however, the following tend to support this position. Streblow v. Sylvester, 195 Iowa 168, 170, 191 N.W. 788, 789; Noble v. United Benefit Life Ins. Co., 230 Iowa 471, 483, 297 N.W. 881, 887; and Tuthill v. Alden, 239 Iowa 181, 186, 30 N.W.2d 726, 728.

 We now hold that when offered against a party, whether or not he is a witness, his utterances or conduct inconsistent with and contradictory to his present claim whether evidenced by his own testimony, that of his witnesses or facts asserted by him in his pleadings, the warning required as a foundation necessary to impeach a non-party witness does not apply. Walker v. West Coast Fast Freight, Inc. (9 Cir.), 233 F.2d 939, 942; Blackwell v. State, 264 Ala. 553, 88 So.2d 347, 350–351; People v. Le Beau, Cal.App., 235 P.2d 850, 854; Kane v. Wehner, 312 Ill.App. 391, 39 N.E.2d 51, 56; Lovel v. Squirt Bottling Co. of Waconia, supra; Bachman v. Ambos, 83 Ohio App. 141, 79 N.E.2d 177, 180; Stillwell v. State Industrial Accident Commission, 243 Or. 158, 411 P.2d 1015, 1016; and Commonwealth v. Binenstock, 358 Pa. 644, 57 A.2d 884, 888–889, and authorities cited in these opinions.

IV. Defendant's third assignment, error in overruling his motion for mistrial, is based upon a statement made by the prosecutor in closing argument defendant asserts was improper and prejudicial. The arguments were not reported. During rebuttal argument the assistant county attorney argued to the jury that a chief witness for the State, Elmer Conrad, had testified he had been previously acquainted with defendant; that he had seen "defendant before one or two times over a period of years". Defendant promptly objected to the argument as not within the record and prejudicial. When defendant objected the trial court called the reporter who later informed defendant there was nothing in the record regarding this question or answer. The trial court did not then rule upon defendant's objection but granted him the right to make objection at the completion of the arguments as though it had been reported and made during the middle of the arguments in order to save time.

After completion of the arguments defendant made his record objecting to the prosecutor's argument.

The trial court stated that from notes taken at the time he understood the prosecutor to state it was his recollection he had asked Conrad if he had ever seen defendant before and the witness replied he had seen him one or two times over a period of years; that if he was wrong in his recollection the jury would disregard the statement.

In overruling defendant's motion for a mistrial the court stated he would give the following instruction which he did:

"You are hereby instructed that during the final argument given by the Assistant County Attorney, Raymond J. Sloan, Jr., he said it was his recollection he had asked the witness, Elmer Conrad, whether he had ever seen defendant before and that he had answered one or two times over a period of years.

"You are instructed the record does not disclose such a question or such an answer as set forth above, and in your deliberations you are not to consider such statements by the Assistant County Attorney."

Defendant had testified on direct examination:

"Q. Have you ever seen Elmer Conrad or Mr. Hammes before? A. Not to my recollection.

"Q. Other than this incident on November 8. A. Yes."

Defendant contends that therefore the prosecutor's misstatement of the record in argument was on a very material matter which could not be erased from the jury's mind by the cautionary instruction as it permitted the jury to find defendant, because of his previous acquaintance with Conrad, was more likely to have had op-portunity to plan a definite and premeditated attack upon him than if they had not been acquainted.

"We have held repeatedly that misconduct of the prosecuting attorney in argument does not require granting a new trial unless it appears to have been so prejudicial as to deprive defendant of a fair trial [citing cases].

"We have also frequently pointed out that the trial court is in much better position than we are to judge whether claimed misconduct of counsel is so prejudicial as amounts to denial of a fair trial. Considerable discretion is allowed the trial court in passing on such a matter and we will not interfere with its determination unless it clearly appears there has been a manifest abuse of such discretion [citing cases]." State v. Harless, 249 Iowa 530, 536, 86 N.W.2d 210, 213–214. See also State v. Barton, 258 Iowa 924, 931–932, 140 N.W.2d 886, 891, and citations; and State v. LaMar, 260 Iowa 757, 151 N.W.2d 496, 500–501.

The trial court necessarily found defendant was accorded a fair trial notwithstanding his claim of misconduct of the prosecutor. After giving such finding the weight it deserves we are not justified in holding it clearly appears the finding was a manifest abuse of discretion. See State v. Harless, supra.

V. From what we have said, it necessarily follows the court did not err in refusing to grant defendant a new trial for any reason urged.

We have considered each error assigned by defendant and find none requiring a reversal.

Affirmed.

All Justices concur.