STATE of Iowa, Appellee,

v.

Kenneth STILL, Appellant.

No. 55165.

Supreme Court of Iowa.

July 3, 1973.

Oscar O. Over, Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., Robert D. Jacobson, Asst. Atty. Gen., Lyle A. Rodenburg, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, REES, REYNOLDSON, and HARRIS, JJ.

MASON, Justice.

Kenneth Still appeals from judgment following his conviction by a jury of the crime of selling a narcotic drug in violation of section 204.2, The Code, 1971.

Defendant assigns five grounds as a basis for reversal: (1) the court abused its discretion in sentencing defendant; (2) the sentence is excessive; (3) the court erred in overruling defendant's motion for mistrial based on alleged misconduct of the prosecutor; (4) the court erred in overruling defendant's motion for directed verdict renewed at the close of all the evidence; and (5) the defendant's motion for new trial should have been sustained.

It is well settled that on defendant's appeal from criminal conviction based on jury verdict challenging sufficiency of evidence to sustain the verdict, this court views the evidence in the light most favorable to the State and accepts as established all reasonable inferences tending to support the jury's action. It is necessary to consider only the supporting evidence whether contradicted or not. It is the task of the fact finder to resolve questions of fact and assess the credibility of witnesses. And a finding of guilt is binding on the appellate court unless without substantial support in the record. State v. Schurman, 205 N.W. 2d 732, 733 (Iowa 1973).

Defendant-Still was accused of having sold a quantity of narcotics to Steven Keenley who was working as an undercover agent for the Iowa Narcotic Drug Division in the Council Bluffs area. March 3, 1971, Keenley was introduced to defendant and Donald Moreland by an informant for the purpose of buying a machine gun from defendant. In the course of their conversation, the parties also discussed the sale of 15 ounces of hashish possessed by defendant and Moreland. Keenley elected to purchase only one ounce that night; however, a second meeting was arranged the following evening, March 4, at a Pizza Hut in order that Keenley might acquire the remainder.

Keenley and the informant arrived at the Pizza Hut at about 6:00 p. m. Defendant, Moreland and Richard Hanson arrived some 45 minutes later. Keenley and defendant sat at one table, while the other three sat at an adjacent table.

Keenley testified he then questioned defendant about the purchase of the remaining 14 ounces of hashish. Defendant said he would sell the drugs but that Moreland would have to obtain and deliver the hashish to Keenley. Accordingly, Keenley stated he discussed the matter with Moreland at the other table while defendant made a phone call. After Keenley and defendant returned to their table, Moreland approached them and questioned defendant concerning the alleged sale. Keenley testified defendant instructed Moreland to go after the drugs in defendant's car; Moreland and Hanson left the Pizza Hut and returned about 15 to 20 minutes later. Keenley met them in the parking lot and requested that the exchange take place there. Hanson, who held the hashish, and Keenley sat inside defendant's car and Moreland entered the Pizza Hut. Because Keenley could not pay for the drugs without first obtaining change for a twenty dollar bill, he and Hanson returned to the Pizza Hut. Keenley was unable to acquire the correct change necessary to pay the agreed price of $14 for the hashish and

therefore decided to pay a dollar more. He then asked Moreland, who was seated with defendant, who should receive the money, was told either of them, and paid Moreland the fifteen dollars.

Defendant's testimony was substantially the same as Keenley's concerning the series of events on March 3 and 4. He admitted discussing with Keenley the availability and price of the 14 ounces of hashish on March 4 in the Pizza Hut, but stated he informed Keenley any purchase would have to be made from Moreland. Defendant, in effect, admitted knowledge of the alleged sale but denied any wrong doing. He further denied having any discussion with Keenley on March 3 in regard to the sale of drugs.

Rozetta Hallcock, a chemist with the Iowa Bureau of Criminal Investigation, testified she had analyzed the particular substance involved in this litigation and had found it to be marijuana.

At the close of the State's evidence defendant filed a motion to dismiss the information and in the alternative for directed verdict, alleging the State "failed to establish each and every element of the information." Defendant then introduced his evidence and renewed his motions at the close of all the evidence. The motions were again overruled and the matter was submitted to the jury. Following return of the verdict defendant filed motion for new trial which was overruled.

I. We will consider defendant's assignments of error other than in the order argued. In his fourth assignment defendant maintains the court erred in failing to sustain motion for directed verdict made at the close of all evidence.

■ At the close of the State's evidence defendant filed the following motion: "Comes now the defendant and moves the Court for an order dismissing the Information filed herein for the reasons that the State of Iowa has failed to establish each and every essential element of the Infor-

mation filed herein of the Information beyond a reasonable doubt *and in the alternative a directed verdict of acquittal.*" (Emphasis supplied)

The motion was overruled and renewed at the close of all evidence on the same basis as originally set forth and again overruled.

Assuming as the State contends, that the motions are separable, it is arguable defendant failed to preserve the alleged error since the motion for directed verdict was not sufficiently specific to alert the trial court as to the grounds urged for such motion. For a discussion of motions for directed verdict and judgment of acquittal see State v. Deets, 195 N.W.2d 118, 123–124 (Iowa 1972).

We will proceed to consider the assignment as though a proper record had been made.

In a criminal action the cause should be submitted to the jury and the court should not direct a verdict of acquittal if there is any substantial evidence reasonably tending to support the charge. See State v. Brown, 172 N.W.2d 152, 155 (Iowa 1969) and authorities cited.

Defendant argues an apparent contradiction in Keenley's testimony concerning his conversation with defendant and Moreland on March 3 effectively negated the reliability of his remaining testimony.

Keenley initially related these facts: "Previous, the night previous on March 3rd I had a discussion with Mr. Moreland about a 15 gram quantity and I purchased from him a one gram sample for my own interest to make sure it was hashish; purchased that gram for one dollar. The previous conversation with Mr. Moreland was —first he wanted $4.00 per gram so I did have conversation with Mr. Moreland of lowering the price of the hashish from $4.-00 to $1.00 per gram the preceding night on March 3rd."

Keenley later returned to the stand and gave this testimony: "At no time during

the night of March 3rd or 4th did I ask Donald Moreland if he had any dope or narcotics for sale. I never asked Mr. Hanson if he had any narcotics or dope for sale. On the evening of March 3rd, 1971, I talked with Mr. Still, and everything was set up with him. Mr. Still told Mr. Moreland to get the hashish on March 3rd. I got the exact conversation I heard Mr. Still make when he gave this order to Mr. Moreland."

The offense for which defendant was charged allegedly occurred on March 4, and although this testimony raises doubt concerning the March 3 transaction, the evidence, as recited above, certainly does more than generate mere suspicion, conjecture or speculation as to defendant's role in the alleged sale at the Pizza Hut on March 4.

When the evidence is viewed in light of the rule repeated from State v. Schurman, the court was justified in overruling defendant's motion for direct verdict and submitting the matter to the jury. The assignment is without merit.

II. In his fifth assignment defendant insists the court should have granted him a new trial.

In view of the argument made by defendant in this court we set out from the record the motion for new trial in its entirety:

"COMES NOW the defendant, Kenneth Still and moves the Court for an Order granting him a New Trial for the following reasons, to-wit:

"1. That the jury verdict is contrary to the law.

"2. That the jury verdict is contrary to the evidence.

"3. That the defendant was tried for a narcotics charge and the law has since been changed; that marijuana has now been classified as a hallucinogenic drug; that the defendant has been denied due process of law by

being tried on an offense changed before trial.

"WHEREFORE, defendant prays for an Order of this Court granting him a new trial.

"KENNETH STILL, Defendant"

This statement of law appears in State v. Tokatlian, 203 N.W.2d 116, 119 (Iowa 1972):

"The phrase, 'contrary to the evidence,' in statutes authorizing new trial on ground that verdict is contrary to the evidence such as section 787.3(6), The Code, has been interpreted as synonymous with the phrase, 'against the weight of the evidence,' which is used interchangeably with the phrase 'insufficiency of the evidence.'

"Saying ' "that the verdict is contrary to the evidence" ' is just another way of saying that the evidence was insufficient to justify the verdict. * * * [citing authority]

" * * *

"In a criminal case where the verdict is clearly against the weight of the evidence motion for new trial should be granted under section 787.3(6), The Code. State v. Carlson, 224 Iowa 1262, 1265, 276 N.W. 770, 772. But, where the evidence when viewed in the light stated in State v. Brown, supra, * * * [172 N.W.2d at 153] and in those cases following that decision, is found to be substantial and reasonably tending to support the charge, a conviction should not be disturbed."

■ The phrase "contrary to law" in statute regulating motion for new trial means contrary to principles of law as applied to facts or issues which the jury was called upon to try. Ellwanger v. State, 203 Ind. 307, 180 N.E. 287, 289. See also 24 C.J.S. Criminal Law § 1451; 58 Am.Jur.2d, New Trial, section 134; and 9 Words & Phrases, Contrary to Law, page 638, for other definitions of the phrase.

Defendant argues in support of this assignment that due to the inconsistencies in

the testimony of the prosecution's main witness, Mr. Keenley, the verdict is contrary to law and evidence, and therefore a new trial should have been granted pursuant to section 787.3(6), The Code, 1971.

The pertinent part of this section is as follows:

"Grounds

The court may grant a new trial for the following causes, or any of them:

" *   *   *

"6. When the verdict is contrary to law or evidence; but no more than two new trials shall be granted for this cause alone.

" *   *   *."

As pointed out earlier defendant's assertion merely tells us he contends the evidence was insufficient to justify the verdict.

■ ■ Assuming arguendo, as defendant contends, both statements uttered by Keenley as a witness which are set out in division I, supra, cannot be true, it remains the function of the fact finder, not ours, to weigh one against the other to decide if such witness is worthy of belief. State v. Frommelt, 159 N.W.2d 532, 535 (Iowa 1968); State v. Jennings, 195 N.W.2d 351, 357 (Iowa 1972). It is only when the State's witnesses so contradict themselves as to destroy entirely the probative effect of their testimony that a question of law is presented obviating necessity for submitting criminal case to a jury. State v. Hammer, 246 Iowa 392, 396, 66 N.W.2d 490, 492. It cannot be said, as a matter of law, the verdict was without substantial support in the record.

The trial court was correct in overruling defendant's motion for new trial. See State v. Brown, State v. Schurman, and State v. Tokatlian, all supra.

Other contentions advanced in written argument by defendant in this division were either not raised in the trial court and thus present nothing for review in this court or are merely repetition of assertions made and considered in support of other assignments of error.

■ III. Facts giving rise to defendant's third assignment—the court erred in overruling defendant's motion for mistrial based on alleged misconduct of the prosecutor—occurred during the cross-examination of defendant.

Still had testified on direct examination he had been convicted in federal court for participation in a transaction which involved a machine gun. Under questioning by his counsel Still testified he had received the gun from Dean Crabtree and had taken it to a pawn shop for him.

Defendant in relating the circumstances under which he met the informant involved in the case before us testified that about two weeks before March 3 the informant had asked him if he could buy a gun from him. Still claims he told him "No." He explained how when he met the informant in a tavern on March 3 inquiry was again made about guns. This time Still says he told the informant he had a World War II sub-machine gun for sale and was advised by the informant Keenley was in the market for such a gun. Still contacted Keenley who purchased the weapon. It is defendant's version he had left the tavern, gone after the gun and was not present when Keenley was negotiating for the purchase of an ounce of marijuana.

On cross-examination defendant was asked:

"Q. *   *   * When did you get that gun from Mr. Crabtree? A. November of last year.

"Q. In November of last year? A. Somewhere in the winter time; late fall, early winter.

"Q. Do you know where Mr. Crabtree is now? Have you seen him recently? A. No.

"Q. Do you know if he is in prison? A. No, I do not."

At this point defendant moved for mistrial. It was overruled and the prosecutor was admonished "to confine his examination to those matters covered in direct examination."

On redirect examination Still was asked about his ownership of a 1964 Corvette, his unemployment during the past year and the occasion for his being in hospitals 15 or 20 times for operations in the past year.

On re-cross-examination Still testified that he had had an operation in Omaha for a broken jaw. He was asked:

"Q. How did that result?

"MR. WATTS: Objection, this is not relevant.

"THE COURT: Sustained.

"Q. Could you tell us whether or not you are a member or have been a member of a group known as the Hells Angels?

"MR. WATTS: I move for a mistrial. When he knows the answer.

"THE COURT: Sustained. The objection is sustained not the motion; objection to the question."

The foregoing evidence alone forms the basis for defendant's assignment of error.

In considering a contention that the prosecutor's misconduct in argument constituted grounds for a mistrial which entitled defendant to a reversal this court in State v. Hephner, 161 N.W.2d 714, 721 (Iowa 1968), said:

" 'We have held repeatedly that misconduct of the prosecuting attorney in argument does not require granting a new trial unless it appears to have been so prejudicial as to deprive defendant of a fair trial [citing cases].

" 'We have also frequently pointed out that the trial court is in much better position than we are to judge whether claimed misconduct of counsel is so prejudicial as amounts to denial of a fair trial. Considerable discretion is allowed the trial court in passing on such a matter and we will not interfere with its determination unless it clearly appears there has been a manifest abuse of such discretion [citing cases].' * * * [citing authorities]."

The trial court here, as in *Hephner*, necessarily found defendant was accorded a fair trial notwithstanding his claim of misconduct of the prosecutor. After giving such finding the weight it deserves, we are not justified in holding it clearly appears the finding was a manifest abuse of discretion.

It necessarily follows the trial court did not err in refusing to grant defendant a new trial for the reasons urged.

IV. After overruling defendant's motion for new trial the court sentenced defendant to the men's reformatory at Anamosa, Iowa, for a period of not to exceed five years and ordered that he pay a fine of $300.

In his two remaining assignments defendant contends, (1) the imposition of such a severe sentence was an abuse of discretion by the district court and (2) the sentence imposed by the court is excessive.

Under the former section 204.20, The Code, 1971, repealed by the Uniform Controlled Substance Act, which became effective July 1, 1971, the maximum sentence for the offense charged was imprisonment for a period not less than two or more than five years and a fine of not more than $2000.

The Regular Session of the Sixty-fourth General Assembly, chapter 148, section 601, subparagraph 1, provided:

"Prosecution for any violation of law occurring prior to the effective date of this Act is not affected or abated by the passage of this Act. If the offense being prosecuted is similar to one set out in division IV of this Act then the penalties under division IV shall apply if they are less than those under prior law."

" * * * It is evident from the language of the savings clause * * * [in

the last above quoted portion of the legislative enactment] that the legislature intended to make its penalties applicable to all future sentences where they were less than those in the old statute. * * * The new statute *could* apply in every case involving a similar charge under the statutes in which valid sentence had not been pronounced as of July 1, 1971." (Emphasis in the original.) State v. Wiese, 201 N.W.2d 734, 737 (Iowa 1972).

Sentence in the case before us was pronounced October 8, 1971 under the new statute, section 204.401(1)b, The Code, 1973.

■ The new statute does provide for an indeterminate sentence, however the legislature has established the maximum imprisonment at not to exceed five years. Under an indeterminate sentence the parole board determines the minimum time served. State v. Wiese, 201 N.W.2d at 738.

It is readily apparent the trial court imposed a valid sentence on defendant in accordance with the provisions of the statute since it does not exceed the statutory maximum.

The trial court had the right within the limits provided by section 204.401(1)b to fix such punishment for the crime as it thought defendant deserved. The pertinent part of this section as it appears in The Code, 1973, provides a penalty for any person who violates this subsection with respect to:

"Any other controlled substance classified in schedules I, II, or III, is guilty of a public offense and upon conviction, shall be punished by imprisonment in the penitentiary for not to exceed five years and by a fine of not more than one thousand dollars."

Therefore, unless there is an abuse of discretion we will not interfere with the sentence. State v. DeRaad, 164 N.W.2d 108, 112–113 (Iowa 1969).

■ Defendant's contention that the trial court abused its discretion in pronouncing sentence is based on its failure to follow the provisions of section 204.410, The Code, 1973, which provides:

"Reduced sentence for accommodation offenses

Any person who enters a plea of guilty to or is found guilty of a violation of section 204.401, subsections 1 or 2, *may move for and the court shall grant* a further hearing at which evidence may be presented by the person, and by the prosecution if it so desires, relating to the nature of the act or acts on the basis of which the person has been convicted. If the convicted person establishes by clear and convincing evidence that he delivered or possessed with intent to deliver a controlled substance only as an accommodation to another individual and not with intent to profit thereby nor to induce the recipient or intended recipient of the controlled or counterfeit substance to become addicted to or dependent ·upon the substance, the court shall sentence·the person as if he had been convicted of a violation of section 204.401, subsection 3." (Emphasis supplied)

The relevant part of section 204.401(3) above referred to is as follows:

" * * * [I]f the controlled substance is marijuana, the punishment shall be by imprisonment in the county jail for not more than six months or by a fine of not more than one thousand dollars, or by both such fine and imprisonment. All or any part of a sentence imposed pursuant to this section may be suspended and the person placed upon probation upon such terms and conditions as the court may impose including the active participation by such person in a drug treatment, rehabilitation or education program approved by the court."

Defendant in argument insists the facts presented did not warrant the severe penalty provided by section 204.401(1)b since justice would best be served by the imposition of a fine or suspended sentence for confinement in the county jail as provided in the statutes just quoted.

The State in response maintains the court did not abuse its discretion in imposing sentence under the record made because defendant failed to move for a hearing under section 204.410 before sentence was imposed. It argues the section involved requires defendant to request a hearing before the court to determine if the sale he made was an accommodation sale; having failed to do so defendant has waived his right to be sentenced under the section providing for a reduced penalty.

The State asserts the following portion of section 204.507(1), The Code, 1973, supports its position:

"It is not necessary for the state to negate any exemption or exception set forth in this chapter in any complaint, information, indictment or other pleading or in any trial, hearing, or other proceeding under this chapter."

It is undisputed defendant took no steps at the sentencing stage to obtain a further hearing before the court to present evidence relating to the nature of the act of which he had been convicted.

█ Terminology of section 204.410 clearly indicates it is incumbent upon a convicted defendant to formally request a hearing before the court at the sentencing stage if he is to preserve error by reason of the trial court's failure to follow the provisions of this statute. This section is not applicable to the determination of guilt stage. It "establishes only a postconviction sentencing procedure by which the convicted person may, if he so desires, offer evidence in mitigation of sentence." See State v. Vietor, 208 N.W.2d 894 (filed July 3, 1973).

The trial court did not abuse its discretion under the record before us.

The case is therefore

Affirmed.

All Justices concur except REYNOLDSON, J., who concurs in result.