**Doris B. Sauer, formerly Doris B. McKinney, Administratrix of the Estate of Darrell E. McKinney, Sr., Deceased, Plaintiff-Appellee, v. Philmore E. Iskowich, Public Administrator of the Estate of Grandell J. Ring, Deceased, and Northern Illinois Corporation, Defendants-Appellants.**

**Gen. No. 66–48.**

Second District.

March 1, 1967.

Williams, McCarthy, Kinley and Rudy, of Rockford, for appellants.

Fearer and Nye, of Oregon, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

This appeal from the judgment entered on a jury verdict in a wrongful death action essentially involves the narrow issue of whether Grandell J. Ring was the agent of the defendant, Northern Illinois Corporation, at the time of collision in question.

The facts are undisputed. The defendant, Northern Illinois Corporation, is a finance company having its principal office in DeKalb, Illinois. On June 27, 1961, Bion Renfer was employed by the company to call on delinquent accounts, make collections and make repossessions when necessary. On that day he had to pick up a car that had been repossessed in Rockford. He left DeKalb about noon and drove a company car to Rockford, taking Grandell Ring with him to drive the repossessed car back. Grandell Ring did occasional work for Northern Illinois Corporation such as driving repossessed cars, returning them to DeKalb from out of town, and doing handyman work around the warehouse. He was paid in cash for each job he did for the company. Mr. Renfer repossessed the car in Rockford and Mr. Ring drove it to Stevens Pontiac and Buick Garage in Rochelle where it was left. Then Mr. Renfer asked Ring to go to Sycamore with him to repossess a 1960 two-door Pontiac, maroon in color, which Harold Garland had financed through Northern Illinois Corporation. The Pontiac was found in Sycamore, dealer license plates were substituted for Garland's, and Ring drove it back to DeKalb behind Renfer in the company car. They drove to the company warehouse on Locust Street in DeKalb, between Fourth and Sixth Streets, but the doors were locked and no one was there. They arrived at the warehouse between 5:15 p. m. and 5:50 p. m. The warehouse closed at 5 p. m.

Bion Renfer knew that Harold Walker, the man in charge of the warehouse, occasionally after hours would go to the Midway Produce stand, two miles out of De Kalb on Sycamore Road, and consequently, Renfer and Ring went there. They found Mr. Walker there. Renfer told him the car had just been repossessed and asked what should be done with it in view of the fact that the warehouse was closed. Mr. Walker told Mr. Ring to take the car to Dewey's Mobil Station on the corner of Seventh and Oak in DeKalb and leave it there and that he (Walker) would pick it up in the morning. Thereupon, Grandell Ring drove away towards DeKalb in the repossessed Pontiac and Bion Renfer went towards Sycamore in the company car to make other calls further north. Any automobiles which Northern Illinois Corporation repossessed were taken to its warehouse or otherwise to Dewey's Mobil Station, a service station then operated by Larry Dewey. Northern Illinois Corporation had no business relationship with Dewey other than as a customer.

According to Larry Dewey, at about 6 p. m. on the evening of June 27, 1961, Grandell Ring drove the car into his station. They conversed briefly and after five or ten minutes, Grandell Ring got out of the car, left it at the station and left on foot. About an hour later, around 7:00 o'clock, Grandell Ring returned to the service station, picked up the car and left. Mr. Dewey stayed in the station until 10:30 p. m. but Ring had not returned, and he went home.

Grandell Ring was next seen in the Highway Tavern at Rochelle around 10:00 p. m. by Russell Myers. Mr. Myers was a salesman for Stephens Pontiac-Buick and was acquainted with Grandell Ring. According to him, Ring had either been there quite some time or was quite tired. He presumed he had been drinking for some time.

At approximately 12:50 a. m. Grandell Ring, while driving the Pontiac in an easterly direction on Highway

204

U. S. Alt. 30 about two miles west of DeKalb, went over into the westbound lane and collided with the westbound car of Darrell E. McKinney, Sr. Both drivers were killed. A blood analysis of Grandell Ring by a pathologist revealed it to contain 44 milligrams of ethyl alcohol.

Prior to the trial the plaintiff, administratrix of the estate of Darrell E. McKinney, Sr., one of the deceased drivers, voluntarily dismissed the public administrator of the Estate of Grandell J. Ring as a party defendant. The jury returned a verdict in favor of the Plaintiff and against the Defendant Northern Illinois Corporation in the amount of $30,000 and judgment was entered on the verdict.

The theory of the defendant is that the verdict was against the manifest weight of the evidence and that the trial court erred in denying its motion for a directed verdict. The defendant, in the alternative, urges error sufficient for a retrial, in the exclusion of a declaration of intention allegedly made by Ring to Dewey when Ring took the car away from the Dewey Mobil Station.

Plaintiff urges that the jury could reasonably find from the evidence that Ring was acting in the scope of his employment at the time of the accident; that if Ring deviated earlier from his employment, he had returned to his employment at the time of the accident in that it happened while Ring was driving in the direction of the Mobil station and could be presumed to be returning; and that the exclusion of Ring's statement of intention was, at the most, harmless error.

While no question is raised as to instructions, it may be noted that one of the questions the jury had to decide was whether Ring was acting within the scope of his authority. In the language of Illinois Pattern Jury Instruction 50.06, the law was stated to be as follows:

"An agent is acting within the scope of his authority if he is engaged in the transaction of busi-

ness which has been assigned to him by his principal, or if he is doing anything which may reasonably be said to have been contemplated as a part of his employment. It is not necessary that an act or failure to act must have been expressly authorized by Northern Illinois Corporation."

■ This statement of the law is consistent with the rules stated in many cases in this state. However, the application of the rule to a variety of facts and circumstances in individual cases leads to the conclusion that the "rule" is a mode of announcing a result in a given case rather than an instrument of prediction. The mere fact that the employee is not, at the instant of the accident, immediately and sole-mindedly pursuing his employer's occupation, does not necessarily take him out of the scope of his employment. All questions are to be decided in the light of all the relevant factors as to the nature of the employment, and, preeminently, the purpose and physical and temporal degree of the alleged deviation. Anno 51 ALR2d 120, 122.

In reaching conclusions many courts have applied the Restatement of Agency 2d, which provides, as applicable here:

§ 229. Kind of conduct within scope of employment.

(1) To be within the scope of the employment, conduct must be of the same general nature as that authorized or incidental to the conduct authorized.

(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

(a) whether or not the act is one commonly done by such servants;

(b) the time, place and purpose of the act;

206

(c)   the previous relations between the master and servant;

. . . . . .

(f)   whether or not the master has reason to expect that such an act will be done;

(g)   the similarity in quality of the act done to the act authorized;

(h)   whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

(i)   the extent of departure from the normal method of accomplishing an authorized result; . . .

§ 235.   Conduct not for purpose of serving master.

An act of a servant is not within the scope of employment if it is done with no intention to perform it as a part of or incident to a service on account of which he is employed.

In Kovell v. North Roseland Motor Sales, 275 Ill App 566, 579 (1934), the First District Appellate Court, seeking to state a degree of predictability in analyzing the varying results in the cases, quoted with approval this language from an earlier Connecticut case:

"Where the deviation is marked and unusual, the court may determine that the servant was not on the master's business, but on his own; that where deviation is slight and not unusual the court may, and often will, as a matter of law, determine that the servant was still executing his master's business; that where the question of the master's responsibility turns principally upon the mere extent of the deviation of the employee from the strict course of his employment . . . it has been generally held to be one of fact and not of law, and that

207

cases falling between the extremes will be . . . left to jury . . ."

Lohr v. H. Barkmann Cartage Co., 335 Ill 335, 167 NE 35 (1929) involved an employee who was directed to return a truck to the garage at 5 p. m., instead went on a frolic of his own and had an accident miles from the garage, and while proceeding in a different direction, at 7 a. m. the following morning. The Supreme Court reversed the judgment for the employee. In an earlier Illinois Supreme Court decision in Kavale v. Morton Salt Co., 329 Ill 445, 160 NE 752 (1928) the case was properly submitted to the jury on conflicting testimony as to whether an employee who took out the employer's truck after he had finished the work for the day was on a "joy-ride" or was delivering wood to another employee in accordance with an alleged customary permission to so use the truck for that purpose. The court held that, under the conflicting facts, it could not say, as a matter of law, that the presumption that the employee, driving the employer's truck, was in the master's service, had been overcome.

Parotto v. Standard Paving Co., 345 Ill App 486, 104 NE2d 102 (1952) has been cited by Plaintiff as decisive here. In that case, the employee had instructions to return the employer's truck to the garage after finishing his work for the day. Instead, he drove past the employer's garage and went to dinner. After seven hours spent in visiting various taverns, the employee, *admittedly* on his way back to the garage and within four miles of the garage, was involved in an accident. The court affirmed the jury's verdict and the judgment on the basis that the employee was serving the master at the time of the accident and that the violation of his instructions to return earlier did not make his possession illegal at the time of the accident.

On the record before this court, neither the above cited cases nor any other Illinois case which has been cited, can be said to have been decided on identical facts and circumstances. There is no direct evidence that Ring was bringing the car back to the mobil station at the time of the accident—at most, an inference, based on the fact he was heading in that direction. His intoxication and high speed further weakened any consideration that he was, at the moment of the accident, caring for the master's property. (See Caldwell v. Adams, 51 Tenn App 373, 367 SW2d 804, 807 (1963).) Ring did not "deviate" en route to the station—he had already reached there, left the vehicle, and only later returned to take it out. The taking was not shown to be the result of any custom, nor was Dewey a person authorized to permit further use of the vehicle on behalf of the defendant. Ring's employment was casual. The vehicle was not one over which he had customary control as might be said of a continuing employee. His job was completed when he left the vehicle at the station. His subsequent use of the vehicle was not even partially connected with the business of the employer, but solely for his own frolic.

■■ We do not withdraw from the position that slight deviation from employment instructions may not be used as a refuge by an employer to escape application of the doctrine of "respondeat superior" when a nonnegligent third party seeks his common-law remedy. However, the conclusion that there was only a "slight deviation" in this case is manifestly against the weight of the evidence. Ring was not returning to his employment. His employment had been concluded when he left the car at the Mobil station. A contrary conclusion under the peculiar facts and circumstances of this case would result in a rule that no matter the nature of the employment or the circumstances of the

deviation, the mere direction of the vehicle toward the city where the original objective was located may be considered a resumption of the employment in the employer's business. We believe that this would strain the doctrines of agency beyond any reasonable contemplation.

The judgment of the trial court is reversed. We therefore do not consider the claim of error in the exclusion of certain offered evidence.

Reversed.

DAVIS and ABRAHAMSON, JJ., concur.