KENNETH E. FUERY, Plaintiff-Appellee, *v.* REGO COMPANY, Defendant-Appellant.

First District (4th Division)    No. 78-547

Opinion filed April 26, 1979.

Franche & Rogers, of Chicago (Richard G. French, Thomas G. Keating, and Julius V. Padegimas, of counsel), for appellant.

Robert W. Karr, of Chicago, for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The plaintiff, while painting the outside window frames of the defendant's plant, fell from his scaffold when someone inside the plant opened a window, knocking the scaffold over. He allegedly sustained certain injuries for which the jury awarded him $34,000. The defendant has contended first in its post-trial motion and now on appeal that (1) there was no evidence that the defendant was responsible for the accident and (2) the $34,000 award was against the manifest weight of the evidence in that the fractures in the right hand shown in the X rays pre-existed the fall from the ladder and were not caused by it. The trial judge rejected these contentions. We affirm.

At trial, the plaintiff Fuery testified that on July 10, 1972, he was employed by Cazel Painting Corporation as a painter; he earned about $310 a week. On that day Cazel assigned him to work at the defendant's plant with Pete, his foreman. He was to paint the windows on the outside of the building, a rectangular, one-story structure. For a scaffold, he used two A-ladders with a plank running between them. To paint he stood on the plank, about 17 feet above the ground. The scaffold was placed less than a foot away from the building. After he had been working about two hours, he suddenly felt the ladder jar. He looked down and saw someone, inside the plant, in work clothes, opening a window. The ladder went back; the whole scaffold fell and he was thrown to the ground. He used his right elbow and forearm to break the fall. Pete, who had been working on another outside wall, took Fuery into the nurse's office. She packed the wrist and hand in ice packs and put bandages on the scrapes. He remained in the nurse's office for over an hour. After that he took a bus to the Callahan Clinic, where he remained for at least two hours. They X-rayed his hand, packed it in ice, and then put it in a plaster cast. The cast was removed in about a month. He then received therapy treatments at the clinic.

Late in August or in September, the plaintiff attempted to go back to work. However, he was dismissed at the end of the first day because he could not do the work. Whenever he would try to paint, he would have cramps in his hand; it would "lock up" and he could not paint.

Some time after this the plaintiff obtained a temporary job as a

bartender to replace someone who was sick. He made $100 a week plus tips. He later worked in a gasoline station. This ended when he went to the hospital because of a gunshot wound in his knee.

Fuery testified that the condition in his hand has not improved. He still suffers the cramps and the "locking up" if he tries to do strenuous work. He is not able to paint for eight hours a day anymore although painting is his only skill. He also cannot play golf or bowl anymore. He does not have the strength in his right hand that he used to have.

He also testified that he had never sustained an injury to his right hand prior to July 10, 1972, and did not sustain any injury to it after that date.

Farouk Barakat, the defendant's manager of industrial engineering, testified for the plaintiff as an adverse witness under section 60 of the Civil Practice Act. On July 10, 1972 the plant was closed for repairs. There were about 40 to 50 people in the plant, maintenance men under Barakat's supervision. There were also a few people in the shop and the office. All of these wore work clothes. When asked if he had seen anyone inside the plant who was not an employee of the defendant, he replied "I don't recall, no." He agreed that the defendant kept records of the people coming into the factory who were not employees. However, he never produced these records although a demand to produce them had apparently been served before trial and this demand was repeated at trial. Nor did the witness ever give any explanation for the fact he never produced them.

Barakat testified that the windows at the plant were opened by pulling on a chain. When opened, the bottom half of the window swung outwards, the top half in. It could be opened to the extent the window was completely horizontal. He also testified that there were no signs posted at the plant on the day of the accident warning people not to open the windows because men were working outside.

Nurse Bragan was also called as an adverse witness pursuant to section 60 of the Civil Practice Act. On July 10, 1972, she was working for the defendant as an industrial nurse; she was the only medical person on the defendant's premises. Fuery was brought into her office. She looked at his arm; his wrist was a little swollen and painful. She put a metal splint on the arm. She probably spent 20 minutes with Fuery.

Dr. Edward Grossman, a doctor specializing in orthopedic surgery, was also called by the plaintiff. He testified that he examined the plaintiff on March 3, 1973. He found a deformity of the fifth metacarpal bone, which is the bone on the outer side of the hand which connects with the fifth finger. He further testified that "at the base of this bone there was a bump which felt hard and bony. The distal end of the bone was dropped down as if to show there was some shortening from the result of the

injury. The grip of the hand was weaker than that of the opposite side of the hand. In squeezing both hands at the same time, the measurement of the right hand showed one-half inch larger than the left hand, indicating a swelling."

Dr. Grossman took X rays of Fuery's right hand. They disclosed two fractures, one of the fifth metacarpal bone and one of the end of the third finger involving the joint. Both appeared to be healed. However there was some mild displacement of the main part of the metacarpal bone and there was a chip off the joint of the third finger.

Dr. Grossman could not tell the age of the fractures by the X rays, except that since it normally takes six to eight weeks for a fracture to heal, they were probably older than that. There was some mild displacement of the fifth metacarpal bone; this produced the bump and the falling down of the head of the bone. Likewise, the fracture of the third finger was not completely healed; chip fractures often do not heal. He was of the opinion that these conditions were permanent; that the injury was a competent cause of pain and of a difficulty in maintaining a tight grip on an object.

The defendant's sole witness was Dr. Berislav Fulgosi, a graduate of the University of Granada, who was also licensed to practice medicine in Illinois. Dr. Fulgosi testified on direct examination that he examined and treated Fuery on July 10, 1972. He had found a contusion of the right forearm and wrist; the X rays showed an old fracture but no new fracture. He put Fuery in a plaster mold for four days and then took it off and put him in physical therapy. He last saw Fuery on July 18, 1972.

On cross-examination, the doctor's testimony revealed some confusion as to whether the X rays showed any fractures at all. Also there was no diagnosis for contusion in his report; he assumed it was contusion because, as he said, "Contusion, it say 'no evidence of pain or other abnormality,' had to be contusion because he's complaining of pain, no?" Dr. Fulgosi, however, admitted that he could not recall anything other than what was contained in the report. He also stated that there was no evidence of bone abnormality and that when he examined Fuery he saw no swelling. He conceded that he did not perform the test of having the patient hold his hand up and push in on the fingers although this is done if a fracture is suspected.

As previously stated, the jury returned a verdict for the plaintiff for $34,000. Since the plaintiff did not present any evidence for special damages, the award presumably was basically for the disability sustained and for pain and suffering.

The defendant in its post-trial motion contended that the verdict was against the manifest weight of the evidence because the evidence showed that a contusion and not a fracture was sustained on July 10, and,

furthermore, that the plaintiff failed to show any evidence connecting the defendant with the accident and failed to show he was not contributorily negligent. This latter contention has been dropped on appeal. The trial court in denying the motion pointed out that these were questions of fact which had been resolved by the jury.

I.

■■ ■ The appellant contends on appeal that the trial judge erred in allowing the issue of liability to go to the jury, arguing that the jury could have inferred from the evidence that persons other than employees of the defendant were present at the plant on the day of the accident and, accordingly, it was pure speculation whether the person opening the window was an employee of the defendant. However, the plaintiff is not required to prove his case to the extent that all other possible influences are eliminated and no contrary verdict could be possible. (*Yamada v. Hilton Hotel Corp.* (1977), 60 Ill. App. 3d 101, 376 N.E.2d 227.) As we stated in *Pearson v. Ford Motor Co.* (1975), 32 Ill. App. 3d 188, 191, 336 N.E.2d 528, 530:

> "It is axiomatic that a finding of negligence may be founded on circumstantial evidence alone. [Citation.] The sole limitation on the use of circumstantial evidence is that inferences drawn therefrom must be reasonable. * * * The law wisely does not demand that the evidence exclude all other possible conclusions."

It is also well established that:

> " 'In an action wherein defendant's liability depends upon proof of a master-servant relation, such relation is prima facie established by showing the alleged servant was performing services peculiar to the defendant's business or affairs on and about the latter's property, and acts done in the rendition of such services may be found to be within the scope of employment, thus calling upon the defendant for rebuttal if he desires to escape the possible consequences.' "

(*Kane v. Wehner* (1941), 312 Ill. App. 391, 400-01, 39 N.E.2d 51, 55.) In light of this, it was reasonable for the jury to conclude that a man in work clothes present inside the defendant's plant was one of the defendant's employees, particularly in light of the facts that the plant was closed so that it was unlikely that outsiders would have been present and that the manager of industrial engineering testified that he did not recall seeing anyone not an employee inside the plant on the day of the accident.

■■ ■ Furthermore, it must not be forgotten that the defendant who had records showing what nonemployees, if any, entered the plant, failed to present any evidence that nonemployees were present on that day.

The defendant did not produce the records even though their production was twice demanded by the plaintiff. If evidence with respect to an issue is within the control of the adverse party, it is he who has the burden of proof on that issue. (*Wohl v. Yelen* (1959), 22 Ill. App. 2d 455, 161 N.E.2d 339.) And an unfavorable evidentiary presumption arises if a party, without reasonable excuse, fails to produce evidence which is under his control. (*Berlinger's, Inc. v. Beef's Finest, Inc.* (1978), 57 Ill. App. 3d 319, 372 N.E.2d 1043; *Dollison v. Chicago, Rock Island & Pacific R.R. Co.* (1976), 42 Ill. App. 3d 267, 355 N.E.2d 588.) Once a *prima facie* case is established by a plaintiff, the trier of fact may infer that available evidence which is not produced by the defendant would be unfavorable to the defendant. (*Dollison v. Chicago, Rock Island & Pacific R.R. Co.* (1976), 42 Ill. App. 3d 267, 355 N.E.2d 588.) The defendant has suggested that the presumption is not applicable because the plaintiff failed to request the court to instruct the jury as to the existence of the presumption. That same point was considered and resolved in *Dollison* where the court, recognizing that the record did not disclose whether such an instruction had been given or not, ruled that the jury still could have reasonably inferred from the nonproduction of certain records that they would have adversely affected the defendant's interest.

■ In addition, we must point out that the jury merely returned a general verdict finding the defendant liable. If there is any evidence in the record from which the jury could have concluded that the defendant was negligent we must affirm. While the point has not been argued by either party on appeal, Barakat testified that there were no signs posted inside the plant warning employees and others not to open the windows since men were working outside. The jury could have concluded this omission constituted negligence.

## II.

The defendant's second contention is that the award of $34,000 is against the manifest weight of the evidence. The defendant has not contended that there was any error in the instructions or that the size of the verdict was a result of passion or prejudice or a patent disregard of any element of damages. (*Werner's Furniture, Inc. v. Commercial Union Insurance Co.* (1976), 39 Ill. App. 3d 59, 349 N.E.2d 616.) Rather, the defendant argues that although the jury merely returned a general verdict for $34,000, the award must have been for disability resulting from a fracture and that the award was against the manifest weight of the evidence because (1) while Dr. Grossman testified the disability and pain was due to the fracture, he could not connect the fracture with the July 10 occurrence and (2) Dr. Fulgosi's testimony that the plaintiff sustained no new fracture on July 10 but only a contusion was uncontradicted and

accordingly could not properly be disregarded. Even if we were to consider the defendant's argument persuasive if the premises upon which it was based were correct, we cannot accept it since it is based on two false assumptions.

First, it is not accurate to say that Dr. Grossman testified that the disability and the pain were caused by the fractures. Dr. Grossman testified that the plaintiff had sustained two fractures; that one did not heal completely; that there was a mild displacement or dropping off of the end of the fifth metacarpal, and that this condition was permanent and was a competent cause of pain and of the difficulty in making a tight grip and sustaining it. It follows that the jury could have reconciled the testimony of the two doctors and concluded that the July 10 injury aggravated a pre-existing injury causing the disability, particularly in light of Dr. Fulgosi's testimony that there was no bone abnormality when he examined the plaintiff.

Furthermore, Dr. Fulgosi's testimony was not uncontradicted. Dr. Fulgosi testified that the fractures he saw were old ones yet the plaintiff testified that he had suffered no prior injury to the hand. Dr. Fulgosi testified that there was no bone abnormality yet Dr. Grossman found one and the plaintiff sustained no injury to the hand in the nine months between July 10 and the date of the examination by Dr. Grossman. Dr. Fulgosi testified that he saw no swelling when he examined the plaintiff yet the nurse testified that there was swelling.

■ The relative weight and sufficiency of expert and opinion testimony in a given case is peculiarly within the province of the trier of fact to decide (*Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668, 356 N.E.2d 565), and it is generally recognized that the statement of a physician as to the diagnosis of a diseased condition of the human body cannot be considered to be absolute. (*O'Keefe v. Lithocolor Press, Inc.* (1964), 49 Ill. App. 2d 123, 199 N.E.2d 60.) The jury was not required to believe Dr. Fulgosi's testimony that the plaintiff did not suffer a fracture on July 10. Moreover, the jury could reasonably have concluded from Dr. Grossman's testimony as to the nature and cause of the disability and the plaintiff's testimony that he had not suffered any injury to his hand before July 10, that up until then he was a painter but that after that date he no longer could paint because of the cramps, that the condition described by Dr. Grossman resulted from the accident on July 10. Proof of a state of health prior to an injury with a following change is competent as tending to establish that the impaired condition was due to the trauma. *Scholle v. Continental National American Group* (1976), 44 Ill. App. 3d 716, 358 N.E.2d 893.

■ It cannot be forgotten that the trial judge here also considered these same arguments in the post-trial hearing and rejected them after careful

consideration. Each verdict for personal injury must be examined with deference to the discretion of the jury making its determination and in a court of review the discretion of the trial judge in ruling on the post-trial motion is entitled to the same deference. *Goodman v. Terminal Railroad Association* (1966), 68 Ill. App. 2d 80, 215 N.E.2d 457.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

JOHNSON and LINN, JJ., concur.