(No. 66011.— )

KEITH L. PYNE, Appellee, v. WILLIAM E. WITMER
*et al.* (D.R.W. Enterprises, Inc., Appellant).

*Opinion filed June 19, 1989.—Rehearing
denied September 29, 1989.*

354

RYAN, J., joined by MILLER, J., dissenting.

Judge & Knight, Ltd., of Park Ridge (Jay S. Judge, Sarah Hansen Sotos and Colleen H. Considine, of counsel), for appellant.

Pollock, Meyers & Eicksteadt, Ltd., of Marengo (Richard W. Eicksteadt, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

In this automobile accident case based on a theory of *respondeat superior*, we are asked to examine the entry of summary judgment in favor of the defendant employer. The central issue is whether a triable question of fact existed as to whether, at the time of the accident, the defendant's employee was within the scope of his employment. We conclude that a factual question sufficient to preclude summary judgment did exist. We therefore affirm the appellate court's reversal of summary judgment and its remand of the cause to the circuit court of McHenry County.

The circumstances of the accident were set forth in detail in the appellate court's opinion. (159 Ill. App. 3d 254.) From that opinion, one justice dissented. We granted the defendant employer's petition for leave to appeal (107 Ill. 2d R. 315(a)).

Briefly, this case involves an employee, defendant William E. Witmer, who, at or near the end of his scheduled work day, drove in his own vehicle from his workplace in Streamwood to Rockford in order to take an evening test that could secure his certification as an automobile mechanic. Witmer's employer, appellant D.R.W. Enterprises, Inc. (D.R.W.), which operated the gasoline station at which Witmer worked, did not pay him wages, mileage, or expenses for the trip, but D.R.W. did issue a

check for the test fee. There is some question whether D.R.W. expected to be repaid by Witmer for the check amount and whether certification would have benefited D.R.W., but for purposes of this appeal the parties are in agreement that, while taking the test, Witmer was within the scope of his employment.

There is some evidence that, before Witmer's journey to Rockford, D.R.W. was aware that he was prone to excessive alcohol consumption, but this appeal does not involve a claim of negligent hiring. See generally *Easley v. Apollo Detective Agency, Inc.* (1979), 69 Ill. App. 3d 920, 931; *Bates v. Doria* (1986), 150 Ill. App. 3d 1025, 1030; 53 Am. Jur. 2d *Master & Servant* §422 (1970).

For appeal purposes, the parties agree that Witmer would have been in the scope of his employment with regard to the test during "travel incident thereto" and that Witmer was not required to report to work in Streamwood again until the next morning. Generally, an employee traveling to or from work outside actual working hours is not in the scope of employment, but an exception exists for employees who are caused by their employers to travel away from a regular workplace or whose travel is at least partly for their employers' purposes rather than simply serving to convey the employees to or from a regular jobsite. See *International Art Studios v. Industrial Comm'n* (1980), 83 Ill. 2d 457, 460; *Givenrod-Lipe, Inc. v. Industrial Comm'n* (1978), 71 Ill. 2d 440, 444; *Warren v. Industrial Comm'n* (1975), 61 Ill. 2d 373, 377; *Irwin-Neisler & Co. v. Industrial Comm'n* (1931), 346 Ill. 89, 93; see also *Hall v. DeFalco* (1988), 178 Ill. App. 3d 408, 413 (exception for employer-facilitated travel); see generally Annot., 52 A.L.R.2d 287 (1957).

Some 2½ hours after he completed his test, Witmer was killed in a 10:30 p.m. automobile collision involving his vehicle and one driven by the appellee, Keith L.

Pyne. According to blood-alcohol evidence, Witmer was intoxicated at the time of collision, and the appellee does not dispute this. The collision site was near Marengo, which lies between Rockford, on the one hand, and, on the other, Witmer's home in Elgin and workplace in Streamwood.

No eyewitness or physical evidence was presented as to Witmer's actual whereabouts or activities from the time he left his test location until the time of the accident. However, his widow testified in a deposition that before leaving for Rockford he had told her he would stay a little late in order to study for a second test session to be held the next evening. Witmer's former mother-in-law also swore in an affidavit that, some 10 years earlier, he had regularly commuted between Capron and Schaumburg for a two-year period and that at that time he had often professed to know all the back roads well.

At the time of the accident, Witmer's southbound route of travel would within two miles have led him to a T intersection with a highway, U.S. 20, that, in turn, could have led him directly east eight miles to Marengo and directly beyond to Elgin, his hometown. About 10 miles north of the accident site is Capron, where he had formerly lived. Thus, both Capron and Marengo are in the same general area of northern Illinois, and Elgin, Schaumburg, and Streamwood are in the same general Chicago northwestern suburban area. The appellee argues that these facts tend to refute the contention that, at the time of accident, Witmer was so intoxicated as not to know where he was and thus was incapable of taking any steps or forming any intention to return to the scope of his employment if he had in fact left it.

Summary-judgment procedure permits a trial court to determine whether any genuine issue of material fact exists (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240), but it is

not designed to try such an issue (*Kobus v. Formfit Co.* (1966), 35 Ill. 2d 533, 538; *Ray v. City of Chicago* (1960), 19 Ill. 2d 593, 599). Summary judgment is to be encouraged in the interest of prompt disposition of lawsuits, but as a drastic measure it should be allowed only when a moving party's right to it is clear and free from doubt. *Reed v. Bascon* (1988), 124 Ill. 2d 386, 393; *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.

If, from the papers on file, a plaintiff fails to establish an element of the cause of action, summary judgment for the defendant is proper. (*Brunsfeld v. Mineola Hotel & Restaurant, Inc.* (1983), 119 Ill. App. 3d 337, 341; *Taylor v. Hocker* (1981), 101 Ill. App. 3d 639, 641; *cf. Randi F. v. High Ridge YMCA* (1988), 170 Ill. App. 3d 962, 964-65 (dismissal for failure to state *respondeat superior* cause of action for employee's intentional tort; analyzing cases).) If what is contained in the papers on file would constitute all of the evidence before a court and would be insufficient to go to a jury but would require a court to direct a verdict, summary judgment should be entered. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587.) However, in determining the existence of a genuine issue of material fact on a motion for summary judgment, the trial court should construe pleadings, depositions, admissions, exhibits, and affidavits strictly against the movant and liberally in favor of the respondent. *Reed v. Bascon* (1988), 124 Ill. 2d 386, 393; *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.

Inferences may be drawn from undisputed facts (*Century Display Manufacturing Corp. v. D.R. Wager Construction Co.* (1977), 46 Ill. App. 3d 643, 648, *aff'd in part, rev'd in part* (1978), 71 Ill. 2d 428), but an issue should be decided by the trier of fact and summary judgment denied where reasonable persons could draw divergent inferences from the undisputed facts (*Amin v. Knape & Vogt Co.* (1986), 148 Ill. App. 3d 1075, 1077,

1078; *Marciniak v. O'Connor* (1981), 102 Ill. App. 3d 381, 386).

Summary judgment is generally inappropriate when scope of employment is at issue. (*Dragovan v. City of Crest Hill* (1983), 115 Ill. App. 3d 999, 1001; see *Metzler v. Layton* (1939), 373 Ill. 88, 93; *Kavale v. Morton Salt Co.* (1928), 329 Ill. 445, 451-52; *Bonnem v. Harrison* (1958), 17 Ill. App. 2d 292, 298-99; *Becker v. Brummel* (1943), 319 Ill. App. 499, 503; *cf. Pantaleo v. Gamm* (1969), 106 Ill. App. 2d 116, 126; see generally 57 C.J.S. *Master & Servant* §617(a)(3) (1948).) Only if no reasonable person could conclude from the evidence that an employee was acting within the course of employment should a court hold as a matter of law that the employee was not so acting. *Boehmer v. Norton* (1946), 328 Ill. App. 17, 21, 24.

For an employer to be vicariously liable for an employee's torts under the doctrine of *respondeat superior*, the torts must have been committed within the scope of the employment. *Darner v. Colby* (1941), 375 Ill. 558, 560, 566-67; *Gomien v. Wear-Ever Aluminum, Inc.* (1971), 50 Ill. 2d 19, 21; see generally W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser & Keeton on the Law of Torts §§69, 70 (5th ed. 1984) (hereinafter cited as Prosser & Keeton); 57 C.J.S. *Master & Servant* §§561 through 563, 570, 574, 615 (1948); 17 Ill. L. & Prac. *Employment* §§251, 252, 255, 257 (1956); Restatement (Second) of Agency §§219, 228 through 237 (1958); *cf.* G. Calabresi, The Costs of Accidents 50-54 (1970); Sykes, *The Boundaries of Vicarious Liability: An Economic Analysis of the Scope of Employment Rule & Related Legal Doctrines*, 101 Harv. L. Rev. 563, 581-90 (1988) (economic perspectives).

"No precise definition has been accorded the term 'scope of employment' " (*Sunseri v. Puccia* (1981), 97

Ill. App. 3d 488, 493), but broad criteria have been enunciated:

"(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, * * *

* * *

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." (Restatement (Second) of Agency §228 (1958).)

These criteria have been elaborated. (See, *e.g.*, Restatement (Second) of Agency §229 (kind of conduct), §230 (forbidden acts), §233 (time), §234 (space), §235 (purpose not master's), §236 (dual purpose), §237 (reentry to scope) (1958).) For guidance, Illinois courts have looked to formulations similar to those just cited. See, *e.g.*, *Wilson v. Clark Oil & Refining Corp.* (1985), 134 Ill. App. 3d 1084, 1089-90; *McDonnell v. City of Chicago* (1981), 102 Ill. App. 3d 578, 583-84; *Sunseri v. Puccia* (1981), 97 Ill. App. 3d 488, 493 (collecting cases).

The burden is on the plaintiff to show the contemporaneous relationship between tortious act and scope of employment. (*Darner v. Colby* (1941), 375 Ill. 558, 560; *Bolwin v. El Kay Manufacturing Co.* (1975), 32 Ill. App. 3d 138, 140.) Proof thereof can be by circumstantial evidence. 57 C.J.S. *Master & Servant* §615(d)(2), at 406 (1948); see *McDonnell v. City of Chicago* (1981), 102 Ill. App. 3d 578, 584.

A distinction between "frolic" (pursuit of an employee's personal business seen as unrelated to employment) and "detour" (an employee's deviation for personal reasons that is nonetheless seen as sufficiently related to

employment) was long ago noted. (*Joel v. Morison* (Ex. 1834), 6 C. & P. 501, 503, 172 Eng. Rep. 1338, 1338-39; see generally Prosser & Keeton §70, at 503-05; Smith, *Frolic and Detour* (pts. 1 & 2), 23 Colum. L. Rev. 444, 716 (1923); Epstein, *The Temporal Dimension in Tort Law*, 53 U. Chi. L. Rev. 1175, 1193-97 (1986).) Once an employee abandons a frolic and reenters the scope of employment, the employer will be vicariously liable for injuries caused by the employee's negligence after reentry. (*Prince v. Atchison, Topeka & Santa Fe Ry. Co.* (1979), 76 Ill. App. 3d 898, 901.) An employee may combine personal business with the employer's business at the time of negligence, yet the employer will not necessarily be relieved of liability on that account (*Flood v. Bitzer* (1942), 313 Ill. App. 359, 365), and the fact that an employee is not immediately and single-mindedly pursuing the employer's business at the time of negligence but has deviated somewhat therefrom (*Sauer v. Iskowich* (1967), 80 Ill. App. 2d 202, 206-09), or that the employee's conduct was not authorized (*Richard v. Illinois Bell Telephone Co.* (1978), 66 Ill. App. 3d 825, 844-45), does not necessarily take the employee out of the scope of employment.

Where an employee's deviation from the course of employment is slight and not unusual, a court may find as a matter of law that the employee was still executing the employer's business. (*Boehmer v. Norton* (1946), 328 Ill. App. 17, 21, 24.) Conversely, when a deviation is exceedingly marked and unusual, as a matter of law the employee may be found to be outside the scope of employment. (*Boehmer*, 328 Ill. App. at 21; see 57 C.J.S. *Master & Servant* §617(a)(3), at 414 (1948).) But in cases falling between these extremes, where a deviation is uncertain in extent and degree, or where the surrounding facts and circumstances leave room for legitimate inferences as to whether, despite the deviation, the employee

was still engaged in the employer's business, the question is for the jury. *Gundich v. Emerson-Comstock Co.* (1960), 21 Ill. 2d 117; *McDonnell v. City of Chicago* (1981), 102 Ill. App. 3d 578, 583; *Sunseri v. Puccia* (1981), 97 Ill. App. 3d 488, 493.

Though D.R.W. insists that the appellee offered no evidence on what Witmer was doing in the time between his test and his accident, and hence no evidence on whether he was within the scope of his employment, the fact is that evidence was offered. The evidence was not direct, but it was circumstantial; its strength would be a matter for the trier of fact. (See, *e.g., Dovin v. Winfield Township* (1987), 164 Ill. App. 3d 326, 337.) Even if the evidence was weak, it is not eradicated by a simple "no evidence" incantation. Yet, D.R.W. repeatedly asserts an absence of evidence; its brief contradicts itself only occasionally in this regard by some skeptical concessions to the presence of "circumstantial 'evidence.' "

If indeed we were to consider circumstantial evidence as nonevidence, we might as well consider D.R.W.'s evidence of Witmer's intoxication as constituting "no" evidence of post-test departure from the scope of employment within which he concededly operated while taking the test: there was no direct evidence on whether his drinking occurred before, during, or after the test, and the toxicological evidence was therefore merely circumstantial with regard to his post-test conduct. Meanwhile, it is as true of D.R.W.'s as of the appellee's evidence that its limitations are "to be expected in this type of case—where death has sealed the lips of the one who might otherwise have shed the most light on the question. The plaintiff was compelled to tell his story with the best evidence available to him." *Sloma v. Pfluger* (1970), 125 Ill. App. 2d 347, 358.

D.R.W.'s perception that evidence was lacking of Witmer's post-test adherence to the scope of employment

underlies D.R.W.'s argument that, because a jury should not be allowed to speculate in the absence of such evidence, summary judgment in D.R.W.'s favor was proper. (See, *e.g., Kramer v. Weedhopper of Utah, Inc.* (1986), 141 Ill. App. 3d 217, 221; *cf. Kramer,* 141 Ill. App. 3d at 223-27 (Stamos, J., dissenting) (urging that mere statistical probability of product supplier's identity was insufficient for jury to find supplier strictly liable).) Obviously, if such evidence were not lacking, D.R.W.'s argument would fail; and so it does here.

The appellee cites evidence of Witmer's familiarity with Marengo-area roads, his position on a road that within two miles would meet a highway leading homeward, his intention to study after the test, his freedom to return at his own pace, and his reporting time for work the next day, all in an effort to show that, before the accident, Witmer arguably remained within or returned to the scope of employment. Because this evidence pertained precisely to Witmer's own background and circumstances rather than simply to a class of persons that happens to include him, this evidence was more than merely statistical, regardless of whether merely statistical evidence might be held insufficient. Moreover, particularly when viewed in the light most favorable to the appellee, the evidence tended to prove that Witmer was within rather than outside the scope of employment.

Furthermore, a jury might be entitled, in view of the timing of events and the jury's experience with the affairs of life (see *Dovin v. Winfield Township* (1987), 164 Ill. App. 3d 326, 337), to consider the possibility that Witmer had stopped for refreshment (and drinks) after the test. If, because of the hour and the fact that he was away from his home kitchen, the jury were to find that he had stopped for refreshment en route rather than simply having chosen to indulge in what D.R.W. charac-

terizes as a drinking bout, the jury might then more easily find him to have remained within the scope of employment. See 57 C.J.S. *Master & Servant* §§570(d)(3), (d)(4) (1948); *cf. Urban v. Industrial Comm'n* (1966), 34 Ill. 2d 159, 161-63 (describing exceptions to going-and-coming rule for incidental personal business of traveling employees); *Duffield v. Marra, Inc.* (1988), 166 Ill. App. 3d 754, 760-61 (leaving motel to get lunch during traveling employee's rest period held incidental to job, hence within scope for purposes of employer railroad's Federal statutory liability). But *cf. Buchino v. Industrial Comm'n* (1988), 172 Ill. App. 3d 162 (employee who spent 30 to 90 minutes drinking with companions in bar while on job-related travel within home city held not to have remained within or reentered scope of employment prior to nonfatal accident).

In short, this is not a case in which a jury would be confined to sheer speculation. Rather than signifying a case ripe for summary judgment, this evidence raises an issue ripe for the fact finder.

D.R.W. objects to the evidence contained in the former mother-in-law's affidavit, on the ground that she could not testify of her own knowledge that, as she swore, Witmer "became knowledgeable" of the routes between Capron and Schaumburg, and on the further ground that it was hearsay for her to swear that Witmer had often stated that he knew all the back roads from Capron to Schaumburg. (D.R.W. also objects that the affiant's identity was not disclosed in timely fashion during discovery, but we can pass over this objection because, when it was raised in the trial court, D.R.W. immediately followed it with the acknowledgment that counsel's illness and the appellee's residence outside Illinois might explain the previous absence of disclosure. Too, D.R.W. did no more in the trial court than raise the point in its reply supporting its motion for summary judgment; it

made no motion to strike the affidavit. See *Kearns v. Board of Education of North Palos Elementary School District No. 117* (1979), 73 Ill. App. 3d 907, 913-14.)

Whether or not the affiant could properly testify that Witmer "became knowledgeable," she could testify as to other matters contained in her affidavit, including Witmer's regular commuting between Capron and Schaumburg. In addition, her testimony regarding Witmer's claim to know the back roads need not be considered hearsay if offered not to prove Witmer's actual knowledge but to prove that Witmer felt he knew the roads and hence that he could have been intending to pursue a chosen route at the time of the accident rather than wandering aimlessly or in confusion. In any event, an intention to return from any frolic could have existed even if Witmer was lost or confused about direction at the time of the accident, as long as it was his desire and endeavor to proceed homeward. Therefore, with the possible exception of the affiant's statement that Witmer "became knowledgeable," we see no reason that her affidavit would not be available to resist summary judgment. See *LaMonte v. City of Belleville* (1976), 41 Ill. App. 3d 697, 701.

Because pertinent evidence was presented on both sides of the scope-of-employment issue, this case differs from *Murphy v. Urso* (1981), 88 Ill. 2d 444, which D.R.W. cites. In *Murphy*, the evidence was uncontradicted that an erstwhile bus driver was moving furniture for friends at the time of an accident and that moving friends' furniture was outside the scope of employment even if the driver were to be considered still employed at the time; accordingly, summary judgment was proper. (88 Ill. 2d at 464-65.) Here, the appellee's evidence does contradict D.R.W.'s as to whether Witmer was within the scope of employment at the time of the accident. Moreover, a current employee's returning from a test

that was authorized by an employer and that arguably benefits the employer's business is not comparable to a past or present employee's using employer equipment to perform unauthorized services for personal friends. Hence, *Murphy* does not support summary judgment for D.R.W.

D.R.W. contends that, on the "real issue in this case" in regard to its liability, it proved the "irrefutable fact" of Witmer's frolic; that it then became the appellee's burden to prove Witmer's reentry to the scope of employment; and that the appellee offered no evidence of reentry. To the contrary, as noted by the appellate court majority, "it is not clear that Witmer was ever on a frolic." (159 Ill. App. 3d at 264.) For all we know, Witmer could have done his drinking before or during the test as well as after, or as part of a normal post-test stop for rest or a meal while on the road to home; he could have had car trouble after leaving Rockford; he could have stayed late in Rockford studying. The mere passage of time did not necessarily mean frolic, and Witmer's route of travel might be found reasonably direct.

As D.R.W. acknowledges, it was D.R.W.'s burden to go forward with evidence tending to show frolic. (See *Fuery v. Rego Co.* (1979), 71 Ill. App. 3d 739, 743; *Kane v. Wehner* (1941), 312 Ill. App. 391, 400-01.) On a motion for summary judgment, however, the present appellee was not required actually to prove reentry or disprove frolic, any more than D.R.W. was required actually to prove frolic; the parties were merely called on to offer sufficient evidence to raise a triable question of fact that was material to the frolic issue. If such a question remained after the appellee responded to D.R.W.'s motion, summary judgment would be precluded.

A jury would not be required to accept D.R.W.'s frolic evidence, rather than the appellee's contrary evidence. If no frolic were found, then at trial the appellee

would not need to have shown reentry to a scope that Witmer would be found never to have left. In other words, D.R.W.'s concern with whether at the summary-judgment stage the appellee "proffered any evidence that [Witmer] had reentered the scope of his employment" would then prove moot. D.R.W. asserts at one point that the question of proffering reentry evidence was "the only issue before the appellate court." If so, D.R.W. deservedly failed in that court to avoid reversal of summary judgment; the question was immaterial, because a jury might find no frolic in the first place. Rather, to avoid summary judgment, all that the appellee had to do was to show a genuine question of material fact as to frolic, not reentry. This the appellee did.

D.R.W. inadvisably relies on *Prince v. Atchison, Topeka & Santa Fe Ry. Co.* (1979), 76 Ill. App. 3d 898, to support its contention that as a matter of law Witmer was on a frolic. In *Prince*, employees were traveling from a tavern (where they had been observed during working hours) and seemingly proceeding toward their workplace. At that time, they should have been neither traveling from that location nor drinking. They had been given specific instructions on where to work that day and when to return from there to their permanent workplace, where they would pick someone up at the end of the work day. Instead of obeying the instructions, they began drinking, left the jobsite early, drove 16 miles to the tavern, and began traveling from there more than an hour before the end of the day.

The *Prince* court held as a matter of law that, by the time they reached the tavern, the employees were on a frolic and that, on the facts of that case, their subsequent direction of travel toward their workplace near day's end was insufficient to prove reentry to the scope of employment by the time of their accident. By contrast, in the present case Witmer was authorized and re-

quired to return from Rockford after the end of his normal work day; there is no dispute that Rockford was to be his departure point for the return; there is no question that, before his return trip, he was within the scope of employment; he had no specific instructions as to departure time or route, being required only to report for work the next morning; and the only question is whether, at some point on the return trip, he left the scope of employment. Given conflicting evidence, this was not a question of law.

The appellate court correctly distinguished *Prince*. Though we are not passing judgment on *Prince*'s holding, on this appeal that case might have precedential value as to any reentry attempt by Witmer only if he could first have been held as a matter of law to have left the scope of employment.

Though D.R.W. reiterates its view that the appellee presented no facts in colorable support of reentry that would be sufficient to defeat its motion for summary judgment, D.R.W. persistently equates "no evidence" with circumstantial evidence. The cases cited by D.R.W. in support of its contention are inapposite, since they involved a true absence of material evidence rather than involving circumstantial evidence that needed weighing. See *Seefeldt v. Millikin National Bank* (1987), 154 Ill. App. 3d 715; *Mateika v. La Salle Thermogas Co.* (1981), 94 Ill. App. 3d 506.

As for D.R.W.'s assertion that, in order to be acceptable, any circumstantial evidence on the appellee's part must admit only of the conclusion that Witmer had reentered the scope of employment, D.R.W. is wrong for two reasons. First, as previously noted, no showing of reentry would even be necessary unless a departure from the scope were first found. Second, D.R.W. misapprehends the criteria for weighing circumstantial evidence.

Circumstantial evidence is "often more satisfactory than direct evidence. To be sufficient, circumstantial evidence must show a probability of the existence of the fact, and the circumstantial facts must be of such nature and so related as to make the conclusion reached *** the more probable in a civil action." (2 S. Gard, Illinois Evidence Manual R. 26:04 (2d ed. 1979).) Though "[a] fact cannot be inferred from the evidence when the existence of another fact inconsistent with the first can be inferred with equal certainty from the same evidence" (*Presbrey v. Gillette Co.* (1982), 105 Ill. App. 3d 1082, 1094), circumstantial evidence "need not both create a reasonable inference of the fact to be shown and also exclude all other possible inferences" (*Campbell v. Northern Signal Co.* (1981), 103 Ill. App. 3d 154, 160). The cases cited by D.R.W. on evidence equally supportive of two opposing conclusions were highly fact-dependent and were characterized more by an absence of evidence than by circumstantial evidence. *Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813; *Illinois Bell Telephone Co. v. Purex Corp.* (1980), 90 Ill. App. 3d 690; *Truelsen v. Levin* (1974), 24 Ill. App. 3d 733.

As observed in a case on which D.R.W. relies in another connection and which involved circumstantial evidence of an employment relationship:

> "[T]he plaintiff is not required to prove his case to the extent that all other possible influences [*i.e.*, inferences] are eliminated and no contrary verdict could be possible. ***
>
>> '*** The sole limitation on the use of circumstantial evidence is that inferences drawn therefrom must be reasonable. *** The law wisely does not demand that the evidence exclude all other possible conclusions.' "
>
> *Fuery v. Rego Co.* (1979), 71 Ill. App. 3d 739, 743, quoting *Pearson v. Ford Motor Co.* (1975), 32 Ill. App. 3d 188, 191.

At one point, D.R.W. says that the "only real issue" of this case was whether Witmer was within the scope of employment at the time of the accident. Despite D.R.W.'s various formulations of the gist of this case, the chief issue before the appellate court, as later before us, was really *whether a genuine dispute* existed as to a material fact regarding Witmer's being within the scope at the time of the accident. Since there was such a dispute, and reasonable persons could draw divergent inferences from the evidence presented, summary judgment was improperly entered.

Accordingly, the judgment of the appellate court, reversing the judgment of the circuit court of McHenry County and remanding the cause to that court, is affirmed.

*Judgment affirmed.*

JUSTICE RYAN, dissenting:

The majority opinion cites all the correct propositions of law, but comes to the wrong conclusion by not properly applying them. I, therefore, dissent.

No other inferences can be logically drawn than that the deceased was not in the course of his employment at the time of the accident, but was on a "frolic" of his own. He was sent to Rockford to take a test. As agreed by the parties, it is not disputed that he would have been in the course of his employment during the taking of the test and during travel incident thereto. However, the accident happened 2½ hours after the test was completed, and at a place where his employment would not have taken him. The most direct route between Rockford and the deceased's home is Interstate Highway 90. The next most direct route is U.S. Highway 20. The deceased was on neither of these highways at the time of the accident. The majority opinion seems to imply that he was travel-

ing in an area he could be expected to travel on his way home from Rockford. He was not. He was traveling south on a country road, two miles north of U.S. Highway 20. He was coming from the north and not from Rockford, which is directly west of the scene of the accident. The country road on which he was traveling is not a shortcut to Rockford. In fact, it does not even lead to Rockford. Rather, it is directly south of Capron, Illinois, the town in which the deceased formerly lived. One need only look at a road map of Illinois to be convinced that the deceased's employment did not place him at the scene of the accident. Travel incident to the employment in which the deceased was engaged would have taken him to Rockford and then back to his home. It would not have taken him on a tour of northern Illinois.

Furthermore, at the time of the accident, the deceased's blood-alcohol content was .187, nearly twice the legal limit for driving of .10. Possibly a beer or two, or even a slight overindulgence alone, would not have jeopardized the deceased's course-of-employment status. However, he so deviated from his assigned mission that he became intoxicated to the extent that he was committing a serious criminal act by driving. That, coupled with the deviation in time and travel, prevents me from agreeing with the majority's conclusion that there exists a question of fact as to whether the deceased was in the course of his employment. Summarizing, the accident happened 2½ hours after the test was completed, at a place where the deceased's employment did not take him, and he was so intoxicated that he could not lawfully drive.

This was not a case of a slight deviation from the deceased's employment. He had so departed from his assigned purposed that as a matter of law, it cannot be said he was performing within the course of his employment. He was, instead, serving solely his own personal

purpose. The mere fact that he was driving in the general direction of his home did not bring him back within the scope of his employment. (See *Sauer v. Iskowich* (1967), 80 Ill. App. 2d 202, 209.) An employer may be liable to a third person for the acts of his employee when such acts are committed in the course of employment and in furtherance of the business of the employer. However, the employer is not liable to an injured third party where the acts complained of were committed solely for the benefit of the employee. *Webb v. Jewel Cos.* (1985), 137 Ill. App. 3d 1004, 1006; *Hoover v. University of Chicago Hospitals* (1977), 51 Ill. App. 3d 263, 266-67.

For the above reasons, I dissent.

JUSTICE MILLER joins in this dissent.