In the

# United States Court of Appeals

### For the Seventh Circuit

No. 00-1469

JOHN S. SHOCKLEY,

*Plaintiff-Appellee,*

*v.*

JACLYN M. SVOBODA, in her individual capacities,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 94 C 1122—**Michael M. Mihm**, *Judge.*

ARGUED JUNE 3, 2003—DECIDED AUGUST 19, 2003

Before FLAUM, *Chief Judge*, and BAUER and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* In 1994, Plaintiff John S. Shockley filed a § 1983 lawsuit against Defendant Jaclyn M. Svoboda, alleging that Svoboda violated his First Amendment rights by instituting sexual harassment claims against him following comments Shockley made to colleagues in the political science department at Western Illinois University (WIU) that Svoboda was having an affair with another professor. The district court determined that Shockley's comments were best characterized as "an internal grievance" and did not warrant First Amendment protection because they did not involve a

matter of public concern. Accordingly, the district court granted summary judgment to Svoboda on Shockley's § 1983 claim, and Shockley does not appeal that judgment.

In response to Shockley's § 1983 suit, Svoboda filed several counterclaims, including defamation, invasion of privacy, intentional infliction of emotional distress, and a violation of the Family Education and Privacy Rights Act (FERPA), 20 U.S.C. § 1232g(b)(1), initiated through § 1983. The district court granted summary judgment in favor of Shockley on Svoboda's intentional infliction of emotional distress and FERPA counterclaims in 1997 and on portions of her defamation and invasion of privacy counterclaims in 1999, finding that Shockley's comments to his colleagues were made within the scope of his employment. Svoboda later voluntarily dismissed her remaining counterclaims, but reserved her right to appeal the district court's decisions as to her FERPA counterclaim and whether Shockley's comments were made within the scope of his employment, which she now exercises. For the following reasons, we affirm.

**BACKGROUND**

During the 1992-93 academic year at WIU, Professors Shockley and Crockett shared an office in the political science department. Because Svoboda was a graduate student at the time, working under Crockett's supervision, the two were often seen together. On April 13, 1993, Shockley attempted to enter his office, but found the door locked with Crockett and Svoboda inside. The two claimed to have inadvertently locked the door. Shockley then told Crockett that he had received several complaints from students that Crockett did not honor his scheduled office hours and often let his classes out early. Crockett angrily told Shockley to "mind his own business."

Upset by Crockett's reaction, Shockley took his concerns to the department chairman, Professor Charles Weston, and also expressed his belief that Crockett and Svoboda were having an affair. Between April 14-16, 1993, Shockley and other political science professors from WIU attended the American Political Science Association's annual conference in Chicago where Shockley witnessed Crockett and Svoboda enter a conference session together late.

When he returned from the conference, Shockley again voiced his concerns to Weston and learned that Weston had confronted Crockett and Svoboda, but the two had denied having an affair. Apparently dissatisfied with Weston's response to the allegations, Shockley spoke with four fellow professors from WIU's political science department (Phyllis Rippey, Dennis Hart, Fred Villenueva, and Ahmed Sheikh) as well as the department secretary, Debbie Wiley, about his concerns and asked whether he should advise the University President. Shockley also spoke with Svoboda's boyfriend, Bradley Hix, a WIU graduate student, and informed Hix of his suspicions.

On May 18, 1993, Svoboda filed an internal grievance with WIU, charging Shockley with sexual harassment for relaying his suspicions to so many people, and on October 18, 1993, she filed a charge with the Illinois Department of Human Rights. Shockley then filed a § 1983 lawsuit in the district court in April 1994, alleging a deprivation of his free speech because Svoboda filed her charges in retaliation for his comments.[1] Svoboda filed state law counterclaims for defamation, intentional inflic-

---

[1] Again, the district court found that Shockley's comments did not deserve First Amendment protection because they did not involve a matter of public concern, and Shockley did not appeal that decision.

tion of emotional distress, and invasion of privacy as well as a § 1983 counterclaim for a violation of her right to privacy under FERPA, which prohibits certain disseminations of student academic files. Svoboda claimed that Shockley had accessed her WIU files during discovery and relayed information contained in those files to his attorney. Svoboda also asserted a Title VII sexual harassment claim against WIU and Shockley but voluntarily dismissed that claim against Shockley after this Court held that an individual employee cannot be liable under Title VII in *EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1281-82 (7th Cir. 1995).[2]

The district court entered several orders in this case, only two of which are relevant to this appeal. The first order, entered on September 25, 1997, granted summary judgment to Shockley on Svoboda's FERPA claim, finding that FERPA does not create a private right of action.[3] The court's second order, entered December 29, 1999, granted summary judgment to Shockley on portions of Svoboda's defamation and invasion of privacy counterclaims, finding that Shockley's statements to Weston, fellow WIU professors, and the department secretary were within the scope of his employment.[4] In making the second ruling, the court

---

[2] Svoboda later voluntarily dismissed her remaining sexual harassment claim against WIU, pursuant to the district court's January 10, 2000, order.

[3] The district court also granted summary judgment to Shockley in 1997 on Svoboda's intentional infliction of emotional distress counterclaim, finding that his conduct was not extreme or outrageous.

[4] The court's 1999 order dealt with Svoboda's defamation and invasion of privacy counterclaims, each containing two parts, only one of which is at issue here. First, Svoboda alleged that Shockley's comments to fellow faculty and the department

(continued...)

relied upon affidavits from Weston, Donald Spencer, WIU's President, and Mark Dunn, an Illinois attorney and expert witness on faculty reporting duties, all of which expressed the opinion that Shockley was acting within the scope of his employment when he reported his suspicions about Crockett's and Svoboda's behavior because such reporting protects the integrity of WIU.

Following its 1999 order, and upon agreement of the parties, the district court dismissed Svoboda's remaining counterclaims on January 10, 2000, but Svoboda reserved her right to appeal the above portions of the court's 1997 and 1999 orders. Svoboda timely filed the instant appeal, and seeks review of the district court's decision with respect to her FERPA claim and whether Shockley's statements to WIU personnel were within the scope of his employment.

## ANALYSIS

As with any motion for summary judgment, our review is de novo, and we view the evidence and draw all reasonable inferences in favor of the non-moving party. *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999).

---

[4] (...continued)
secretary at WIU amounted to defamation and invasion of privacy. Second, she claimed that Shockley's similar comments to two, former WIU professors (made at the APSA conference in Chicago) and to Hix were also wrongful.

The district court denied Shockley's motion for summary judgment in its 1999 order on the second portion of Svoboda's defamation and invasion of privacy counterclaims, finding that genuine issues of material fact existed as to the scope of Shockley's comments to the former WIU professors and Hix. Svoboda, however, voluntarily dismissed those remaining claims, seen in the district court's January 10, 2000, order.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) (2003).

Svoboda's first argument is that the district court improperly found that Shockley's comments to Weston, four of his fellow professors, and Wiley were within the scope of his employment, thereby defeating those portions of her defamation and invasion of privacy counterclaims. The Illinois Supreme Court has looked to the Restatement (Second) of Agency § 228 to determine whether conduct of an employee is within the scope of his employment. Conduct is within the scope of employment if: 1) it is of the kind the employee is employed to perform; 2) it occurs substantially within authorized time and space limits; and 3) it is actuated, at least in part, by a purpose to serve the master. *Pyne v. Witmer*, 543 N.E.2d 1304, 1308 (Ill. 1989); *see also Duffy v. United States*, 966 F.2d 307, 314 (7th Cir. 1992). "Conversely, it is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Duffy*, 966 F.2d at 314.

In support of his motion for summary judgment, Shockley submitted affidavits to the district court from Spencer, Weston, and Dunn. Spencer's affidavit stated that

> [t]he issue of consensual sexual relationships between university professors and students is an important concern for universities and such relationships may expose universities to a variety of legal claims. I expect professors at WIU not to engage in such relationships and professors who suspect such relationships must feel free to report such suspicions, and understand that

in doing so they are acting within the scope of their employment.

Weston's and Dunn's affidavits echoed the statements of Spencer, and Svoboda submitted no evidence to contradict these assertions, relying only on her previous filings in response to other motions before the district court. As a result, we find that Shockley's comments to fellow faculty members about his suspicions of an affair were "of the kind" that he was hired to perform.

Likewise, these comments were made within the normal time and space limits of his employment, in that they were made to fellow faculty members during the academic year and close in time to one another. Finally, we reach the issue of whether Shockley's conduct was actuated by a purpose to serve his master. On this point, the only support Svoboda provides for her position is that the deposition of Professor Dennis Hart, one of the four professors to whom Shockley expressed his concerns, opines that Shockley was not motivated by a concern for institutional integrity or professionalism; that it was Hart who provided Shockley with the idea that the university's image could be tarnished if Crockett and Svoboda were having an affair. Svoboda claims that Shockley was only out to "spread gossip" about her because it was Hart who brought up the idea of professionalism to Shockley.

What Svoboda fails to give credit to, however, is precisely what the district court relied upon—namely that Hart's deposition testimony does not reveal that Shockley was *unconcerned* with professionalism or WIU's integrity. Further, one of the other professors with whom Shockley spoke, Phyllis Rippey, expressly testified at her deposition that Shockley raised only concerns about Crockett's professionalism. Given the evidence before the district court, we find no error in the court's decision that

Shockley's comments to colleagues were actuated by a purpose to serve his master and, therefore, that he was acting within the scope of his employment.

The district court also concluded that Shockley was acting within the scope of his employment when he spoke with Wiley. The court noted that Wiley was not within the WIU chain of command as the department secretary, but that she sat immediately outside of Weston's office and was in a "particularly advantageous position to observe what was going on in the department." Wiley testified in her deposition that she had seen Crockett and Svoboda together often, that she had received complaints from students about Crockett's unavailability and early dismissal of classes, and that she had personally observed Crockett returning late from lunches with Svoboda when he had scheduled office hours. Wiley also testified that Shockley expressed similar concerns to her about Crockett's lack of professionalism, as he had done with other faculty members. Wiley, however, did not state that Shockley spoke with her about the alleged affair or that Shockley even mentioned Svoboda.

We find, therefore, that the district court correctly held that Svoboda failed to raise a genuine issue of material fact with respect to Shockley's comments to Wiley, in part, because Svoboda did not rebut Wiley's testimony. Shockley's comments to Wiley concerned Crockett's professionalism, were made within the same time and space limitations as his comments to fellow faculty members, and were actuated by a purpose to serve WIU. Summary judgment for Shockley was appropriate.

Svoboda's second argument is that the district court improperly granted summary judgment to Shockley on her FERPA claim brought under § 1983. FERPA prohibits the federal funding of schools that have "a policy or practice of permitting the release of education records . . . of

students without the written consent of their parents to any individual, agency, or organization," with limited exceptions. 20 U.S.C. § 1232g(b)(1) (2003). Svoboda asserts that during discovery in the district court, Shockley impermissibly viewed her education records and turned that information over to his attorney. Rather than assert a direct violation of FERPA, Svoboda attempted to raise her claim under § 1983 because the Supreme Court has recognized that individuals may, at times, utilize § 1983 to enforce rights created by federal statute as well as the Constitution. *Maine v. Thiboutot*, 448 U.S. 1, 9-10 (1980).

Unfortunately for Svoboda, however, following the parties' submission of the briefs in this case, the Supreme Court held that § 1983 *cannot* be used to assert a FERPA violation. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290-91 (2002). As the Court stated, "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Id.* at 286. Further, "[w]ith this principle in mind, there is no question that FERPA's nondisclosure provisions fail to confer enforceable rights." *Id* at 287. Accordingly, the district court did not err in granting summary judgment to Shockley on Svoboda's § 1983 claim for a FERPA violation.

The judgment of the district court is AFFIRMED.

A true Copy:

     Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*
