SECOND DIVISION
September 29, 2006

No. 1-05-3272

| | | |
|---|---|---|
| FIREMAN'S FUND INSURANCE COMPANY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| v. | ) | |
| | ) | |
| SERGE J. PIERRE-LOUIS and SUBURBAN | ) | |
| BANK AND TRUST, as Trustee Under Trust | ) | Honorable |
| No. 0904, | ) | David R. Donnesberger, |
| | ) | Judge Presiding. |
| Defendants-Appellees. | ) | |

JUSTICE SOUTH delivered the opinion of the court:

This appeal arises from two orders of the circuit court of Cook County entered on March 17, 2005, and September 9, 2005, declaring that plaintiff, Fireman's Fund Insurance Company, owed a duty to defend defendant, Serge J. Pierre-Louis, in an underlying case, as well as a duty to reimburse him for attorney fees and costs incurred in defending that case.

Plaintiff, Fireman's Fund, is a corporation duly licensed in the State of Illinois to write insurance policies. It issued a general liability policy to 155 North Harbor Drive Condominium Association, which was in effect from December 1, 2002, through December 1, 2003. That commercial general liability insurance coverage states in relevant part:

"1. Insuring Agreement.

(a) We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have

the right and duty to defend the insured against any 'suit' seeking

those damages.  However, we will have not [*sic*] duty to defend the

insured against any 'suit' seeking damages for 'bodily injury' or

'property damage' to which this insurance does not apply.  We may

at our discretion, investigate any 'occurrence' and settle any claim

or 'suit' that may result."

Additionally, Section II of the policy defines an insured to include the following:

"Each other unit owner of the described condominium, but

only with respect to liability arising out of ownership, maintenance

or repair of that portion of the premises *which is not owned solely*

*by the unit owner*."  (Emphasis added.)

Defendant Serge Pierre-Louise owns a condominium in Harbor Point at 155 North Harbor Drive in Chicago, Illinois.  On July 21, 2003, members of the maintenance staff responded to a report of a leak in his unit.  Further investigation revealed that his kitchen faucet supply line was causing the leak.  The staff observed water under his kitchen sink, on his kitchen and hardwood floors in the dining room and hallway, and the living room, bedroom and closet carpets.  The Harbor Point Condominium Association, the company which manages the building, sent a letter to defendant advising him of this condition and informed him that 22 other owners in the building had reported water damage to their units as a result of the leak in his unit. Defendant was further advised that "all maintenance, repairs and replacements in a unit are the responsibility of the unit owner, as well as any damages caused to any common element or other

units," and that he should notify his insurance company and contact the owners of the affected units in order to resolve the matter.

On October 17, 2003, Suburban Bank and Trust (Suburban), the titleholder of one of the damaged units adjacent to defendant's, filed a two-count complaint in the circuit court of Cook County against defendant. Count I alleged negligence in that defendant "failed to make required repairs; failed to conform to Code of the City of Chicago; and failed to comply with the requirements of the Declaration and By-Laws of the Harbor Point Condominium Association." Count II of the complaint alleged gross negligence in that defendant had received "written notice of a dangerous and defective condition indicating a high likelihood that the inferior 'plastic lines used for water supply' in the kitchen of the unit were of such a defective nature that they were susceptible to explosion at any time since they were inferior to the pressure demand on the system," and that "[his] total disregard of the warnings given, and received by him, constitutes gross negligence and endangerment of the property of the plaintiff." Count II further alleged that the damages could have been avoided by the replacement of an appliance costing less than $3.

On January 21, 2004, defendant tendered the defense of the Suburban lawsuit to plaintiff. Plaintiff declined to defend the Suburban lawsuit on the grounds that defendant's alleged liability arose out of that portion of his premises which was owned, occupied and used solely and used exclusively by him, *i.e.*, the kitchen water supply line.

On April 21, 2004, plaintiff filed a complaint for declaratory judgment, seeking a finding and declaration that defendant was not entitled to insurance coverage under the policy, and that

plaintiff was under no obligation to defend or indemnify him with respect to the Suburban lawsuit. Defendant ultimately settled the Suburban lawsuit for $2,000.

Subsequently, plaintiff filed a motion for summary judgment, and defendant filed a cross-motion for summary judgment.

On March 17, 2005, the trial court denied plaintiff's motion for summary judgment and granted defendant's cross-motion for summary judgment, declaring it had a duty to defend in the Suburban lawsuit. Defendant was also ordered to file a fee petition and affidavit supporting reimbursement for fees and costs he incurred in defending the Suburban lawsuit.

On September 9, 2005, the trial court entered a final judgment and order, stating that (1) plaintiff had a duty to defend defendant in the Suburban lawsuit; (2) pursuant to the parties' agreement with respect to the fee petition, defendant was awarded $25,000 representing the fees and costs he incurred in defending the Suburban lawsuit; and (3) defendant's request for reimbursement of the settlement amounts paid to settle the Suburban lawsuit was denied. Defendant has not filed a cross appeal on that portion of the order which denied his request for reimbursement of the $2,000 settlement amount.

The issue raised by plaintiff on this appeal is whether the Suburban lawsuit alleges damages which arose out of defendant's ownership, maintenance, or repair of a portion of his condominium unit (a) not owned solely by him and (b) not reserved for his exclusive use or occupancy.

Because this is an appeal from an order granting summary judgment, we review the case *de novo*. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102 (1992).

1-05-3272

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Purtill v. Hess, 111 Ill. 2d 229, 240 (1986). Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt. Purtill, 111 Ill. 2d at 240. Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied. Pyne v. Witmer, 129 Ill. 2d 351, 358 (1989). To determine whether the insurer has a duty to defend the insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant provisions of the insurance policy. Outboard Marine Corp., 154 Ill. 2d at 108. If the facts in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises. Outboard Marine Corp. 154 Ill. 2d at 108. Refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage. Outboard Marine Corp., 154 Ill. 2d at 108.

The Suburban complaint alleges that defendant was the "title holder of record of unit 3110 Harbor Drive" and maintained "his premises in a careless and negligent fashion." Plaintiff argues that such language indicates that Suburban was suing defendant solely because he was the individual owner of the unit which was reserved for his exclusive use and occupancy, thereby disqualifying him as an additional insured under the insurance agreement. According to plaintiff, the factual allegations in the Suburban complaint that defendant was "required" to make "repairs" to the leak on "his premises," indicated that the damages to the other units arose out of a portion of the premises owned solely by him and reserved for his exclusive use and occupancy as

5

opposed to some aspect of the common elements whose maintenance and repair would have been the responsibility of the condominium association.   Defendant's response is that the "water supply line" referred to in the Suburban complaint is  part of the building's pipe system, *i.e.*, a common element.

In existence at the time of the incident was a document entitled "Declarations of Condominium Ownership and of Easements, Restrictions, Covenants and Bylaws for the 155 Harbor Drive Condominium Association."  Article II of that declaration reads in pertinent part:

> "3.01 Description.  Except as otherwise provided in this Declaration, the Common Elements shall consist of all portions of the Property except the Units.  Without limiting the generality of the foregoing, the Common Elements shall include the portions of the Building occupied by the stairways, entrances and exits, elevators, mail boxes, swimming pool, recreation rooms, and other amenity areas, lobbies, corridors, storage areas, managements offices, the Parking Area, all structural parts of the Building, *pipes*, ducts, flues, chutes, conduits, wires and other utility installations to the outlets, and such component parts of walls, floors, and ceiling as are not located within the Units and structural parts of the Building, including structural columns located within the Units ***." (Emphasis added.)

The Suburban complaint alleges that the water leak in defendant's unit emanated from

"inferior plastic lines used for water supply in the kitchen of the unit." The insurance policy covers all of the unit owners with respect to those portions of the premises which are not reserved for their exclusive use. Undoubtedly, water pipes or water supply lines fall under the rubric of common elements since these conduits supply all of the units throughout the building. In other words, there are portions within the individual units which are part of the common elements, which includes water pipes. The water pipes, which supply the entire building, are not used exclusively by any one unit but constitute part of the common elements. Plaintiff is not suggesting that individual water supply lines or pipes are constructed for each unit, nor would such an argument be rational. The pipes or water lines run throughout the building and supply each of the units. Therefore, inasmuch as the allegations in the Suburban complaint allege damages arising out of that portion of defendant's premises which is part of the common elements of the building, we find the trial court did not err in finding that plaintiff had a duty to defend on the underlying action.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HOFFMAN and HALL, JJ., concur.